[Cite as *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 127 Ohio St.3d 257, 2010-Ohio-5770.]

THE STATE EX REL. CYDRUS, APPELLANT, *v.* OHIO PUBLIC EMPLOYEES
RETIREMENT SYSTEM ET AL., APPELLEES.

[Cite as *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*,

127 Ohio St.3d 257, 2010-Ohio-5770.]

*Public employees — Disability retirement — Termination of benefits — Writ of*
*mandamus to restore benefits denied — Retirement board has no duty to*
*explain reasons for termination — Lack of such duty does not violate*
*separation of powers or due process — Board's decision to terminate*
*benefits was not abuse of discretion.*

(No. 2010-0707 — Submitted October 12, 2010 — Decided December 2, 2010.)

APPEAL from the Court of Appeals for Franklin County,

No. 09AP-595, 2010-Ohio-1143.

_____

**Per Curiam.**

{¶ 1}   This is an appeal from a judgment denying a writ of mandamus to compel appellees, Ohio Public Employees Retirement System and Ohio Public Employees Retirement Board, to vacate their order terminating the disability-retirement benefits of appellant, Patricia D. Cydrus, and to issue a new order finding her entitled to benefits, or in the alternative, to compel appellees to issue a new order adequately explaining the reasons for the termination of benefits. Because the retirement board did not abuse its discretion in terminating Cydrus's disability-retirement benefits, we affirm the judgment denying the writ.

**Facts**

{¶ 2}   Patricia D. Cydrus was employed as an executive secretary by the Ohio Department of Youth Services. While employed with the department, Cydrus was a contributing member of appellee Ohio Public Employees

Retirement System. In 1999, Cydrus was involved in an automobile accident and later experienced chronic headaches.

{¶ 3} A December 2000 MRI of Cydrus's brain revealed a "Chiari I Malformation." "Arnold Chiari Malformation Type I" is a "congenital abnormality * * * characterized by the underdevelopment of the bone at the base of the skull (posterior cranial fossa) and overcrowding of the normally developed hindbrain." *Lawson v. United States* (D.Md.2006), 454 F.Supp.2d 373, 378, citing Grossman & Yousem, Neuroradiology: The Requisites (2003) 436. According to Cydrus's treating physician at that time, Lawrence P. Frick, M.D., this condition "allows a portion of the brain to herniate through the skull base which then applies pressure on that part of the brain as well as obstructs the normal flow of cerebrospinal fluid." In January 2002, Cydrus underwent surgery to correct the problem, but she continued to experience severe headaches.

{¶ 4} Almost a year later, Cydrus applied for disability-retirement benefits from the public employees retirement system. She stated that she was incapacitated from her duties as an executive secretary because of severe muscle spasms, headaches, and continuous symptoms, which required medications that did not help her and which resulted in daily pain, poor balance, and sensitivity to light. Cydrus supported her application with Dr. Frick's report, which stated that "her condition is permanently disabling in that she has not responded to all therapy so far and it has been almost one year since her surgery."

{¶ 5} The retirement board initially denied Cydrus's application based in part on an independent medical examination. On appeal and following a second examination, the board approved the application conditioned upon her reexamination in a year. In following years, after annual independent medical examinations and a record review, the retirement board approved the continuation of disability-retirement benefits conditioned upon Cydrus's annual reexamination.

**{¶ 6}** In 2008, the retirement board ordered Cydrus to be examined by a psychiatrist and a neurologist to determine whether she remained permanently disabled. The psychiatrist, Richard H. Clary, M.D., examined her and concluded that "her depression alone is not work prohibitive and does not cause long term disability." The neurologist, Gerald S. Steiman, M.D., examined her and observed that she had "tenderness throughout the paraspinal, lateral neck and trapezius muscles but no evidence of muscle guarding" and "no evidence of a painful tender or trigger point in the occipital, low cervical, trapezius, or supraspinatus regions." Based on his examination and review of her medical records and history, Dr. Steiman concluded that Cydrus is not permanently disabled from the performance of her position as a public employee.

**{¶ 7}** James R. Moore, M.D., reviewed the results of the examinations and recommended that the retirement board terminate Cydrus's disability-retirement benefits based on "insufficient objective evidence of permanent disability due to chronic daily headache." On November 13, 2008, the retirement board accepted the medical advisor's recommendation and terminated Cydrus's disability-retirement benefits. It concluded that "[b]ased upon all the medical information and recommendations," Cydrus was "no longer considered to be permanently disabled from the performance of duty as Executive Secretary," because "there is insufficient objective evidence of permanent disability due to chronic daily headache." The retirement board notified Cydrus by letter that she could appeal the board's determination by filing a written notice of intent to provide additional objective medical evidence within 30 days and submitting that evidence within 45 days from her written notice. See also Ohio Adm.Code 145-2-23(B)(3) and (C).

**{¶ 8}** Cydrus gave written notice of her intent to appeal the retirement board's decision terminating her disability-retirement benefits on December 3, 2008. Within 45 days, her primary-care physician, Jennifer E. Sylvester, M.D.,

submitted her report concluding that Cydrus "is considered totally disabled due to her headaches and the associated symptoms related to her treatment measures for these headaches." Dr. Sylvester noted that "[i]t has been shown on imaging studies that she still has a protrusion of the cerebellar tonsil that was initially documented at 9.7-mm, now has progressed to 14-mm through the foramen magnum. She was seen by a new neurosurgeon, Dr. Bonasso, who at this time, feels that she is stable, but could progress in the future." The imaging report cited by Dr. Sylvester is included in the board's files, but does not bear a time-stamp showing when the board received it and instead includes a facsimile notation that it was received by the board on March 9, 2009, after the deadline for submitting additional evidence had passed.

{¶ 9} On January 20, 2009, Maurice C. Mast, M.D., a medical advisor for the board, recommended that the retirement board terminate Cydrus's disability-retirement benefits. Dr. Mast noted in his recommendation that he had "reviewed the results of the recent examination(s) performed on" Cydrus, and that "[b]ased on the findings presented there is insufficient objective evidence of permanent disability due to [n]o additional new information." On that same day, the retirement board upheld its previous decision to discontinue Cydrus's disability-retirement benefits. The board found that there was insufficient objective evidence of permanent disability and that Cydrus had provided no new information. The board stated that its decision was final.

{¶ 10} In June 2009, Cydrus filed a complaint in the Court of Appeals for Franklin County for a writ of mandamus to compel the retirement board and the retirement system to vacate the order terminating her disability-retirement benefits and to issue a new order finding her entitled to these benefits. In the alternative, Cydrus requested a writ of mandamus directing that the retirement board and the retirement system issue a new order adequately explaining its reasons for the decision. After appellees filed an answer and the parties submitted

a copy of the administrative record and their briefs, the court of appeals magistrate issued a decision recommending that the court deny the writ of mandamus. Cydrus submitted objections to the magistrate's decision. On March 23, 2010, the court of appeals overruled her objections, adopted the magistrate's decision, and denied the writ. *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, Franklin App. No. 09AP-595, 2010-Ohio-1143.

**{¶ 11}** This cause is now before us on Cydrus's appeal as of right.

### Legal Analysis

A. *Mandamus — General Standard*

**{¶ 12}** Cydrus requests extraordinary relief in mandamus, challenging the retirement board decision terminating her disability-retirement benefits. "[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14. The determination of whether a retirement-system member is entitled to the continued receipt of disability-retirement benefits is within the exclusive authority of the retirement board, R.C. 145.362, and the board's denial of an appeal from the termination of these benefits is final and not subject to appeal. See Ohio Adm.Code 145-2-23(C)(3).

**{¶ 13}** Because there is no right to appeal the retirement board's decision terminating disability-retirement benefits, mandamus is an appropriate remedy. *State ex rel. Pontillo v. Pub. Emps. Retirement Sys. Bd.*, 98 Ohio St.3d 500, 2003-Ohio-2120, 787 N.E.2d 643, ¶ 23; *State ex rel. Morgan v. State Teachers Retirement Bd.*, 121 Ohio St.3d 324, 2009-Ohio-591, 904 N.E.2d 506, ¶ 20.

B. *Explanations of Terminations*

**{¶ 14}** Cydrus first addresses her request for a writ of mandamus to compel the retirement board to issue a new decision explaining why it had terminated her disability-retirement benefits.

{¶ 15} "It is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus." (Emphasis deleted.) *Pipoly*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18. There is no statute imposing a duty on the retirement board to explain its decision terminating disability-retirement benefits.

{¶ 16} In addition, although former Ohio Adm.Code 145-11-02 specified that the retirement board must state "its basis of denial" of disability-retirement benefits, that administrative rule was repealed on January 1, 2003, and the new version of the rule has no such requirement. Ohio Adm.Code 145-2-23. See *Hamby v Ohio Pub. Emps. Retirement Sys.*, Franklin App. No. 08AP-298, 2008-Ohio-5068, ¶ 17; 2002-2003 Ohio Monthly Record 1304.

{¶ 17} Therefore, the retirement board had no duty under statute or administrative rule to specify the evidence it relied upon or to explain its reasons for terminating Cydrus's disability-retirement benefits. See, e.g., *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, 902 N.E.2d 953, ¶ 23.

{¶ 18} Nevertheless, Cydrus argues that the retirement board's duty to specify the evidence it relied upon and to explain its reasons for its decision arises from constitutional considerations of separation of powers and due process.

{¶ 19} The retirement system and retirement board's claim that Cydrus failed to raise her separation-of-powers argument in the court of appeals is incorrect. She raised her separation-of-powers argument in her objections to the magistrate's decision.

{¶ 20} Appellees next argue that because both constitutional claims were not raised in any complaint or amended complaint and they did not consent to their consideration, Cydrus waived both claims. Although we "need not address"

the merits of a constitutional claim on appeal when it is not appropriate, we have not held that a court is *precluded* from considering the merits of such claims if the opposing parties have had the opportunity to fully respond. See *State ex rel. Van Dyke v. Pub. Emps. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, ¶ 42.

{¶ 21} In contrast, the court of appeals in this case exercised its discretion by addressing the merits of some of Cydrus's constitutional claims, and the retirement system and retirement board have briefed them. Therefore, we likewise address the merits.

### 1. Separation of Powers

{¶ 22} Cydrus first claims that insofar as Ohio Adm.Code 145-2-23(C)(3) permits the retirement board to terminate disability-retirement benefits without specifying its reasons, it violates the separation-of-powers doctrine by abrogating the plenary power of the judiciary to provide a meaningful review of the board's decisions. "While Ohio, unlike other jurisdictions, does not have a constitutional provision specifying the concept of separation of powers, this doctrine is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 158-159, 28 OBR 250, 503 N.E.2d 136. "The administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 20 O.O.3d 361, 423 N.E.2d 80, paragraph one of the syllabus.

{¶ 23} But administration of justice is not impeded by the lack of a statute or rule requiring the board to explain the reasons for its denial or termination of disability-retirement benefits. Reviewing an administrative record in a mandamus proceeding in such a case is "not any more burdensome than reviewing a

summary judgment entered by a trial court without a detailed opinion.  See Civ.R. 52."  *Pipoly*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 21.

{¶ 24} "Although it may be preferable from a policy standpoint that a retirement board explain its reasoning for its decision, the General Assembly is the final arbiter of public policy."  *State ex rel. VanCleave v. School Emps. Retirement Sys.*, 120 Ohio St.3d 261, 2008-Ohio-5377, 898 N.E.2d 33, ¶ 27.  As we recently observed in rejecting a separation-of-powers claim, "[i]t is not the role of the courts 'to establish legislative policies or to second-guess the General Assembly's policy choices.' "  *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35, quoting *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212.

2. Due process

{¶ 25} Cydrus also claims that due process requires a more detailed retirement board decision.  This court has already rejected a similar claim that the School Employees Retirement System had a duty based on procedural due process to identify the evidence it relied upon and to briefly explain its reasons for denying disability-retirement benefits.  *VanCleave*, 120 Ohio St.3d 261, 2008-Ohio-5377, 898 N.E.2d 33, ¶ 23.  We held that "[e]ven if it were assumed that [the employee] has a property interest in a disability-retirement benefit, she has not demonstrated in this case that she did not receive due process regarding her claim for that benefit."  Id. at ¶ 31.  We determined that the following factors established that she had received the requisite due process:  (1) after her application for disability benefits was denied, she sought reconsideration of that decision and obtained a personal appearance before the board to present her position, (2) after the hearing, the retirement system medical advisory committee requested and received another medical evaluation, (3) after the board upheld its original decision to deny benefits, she had the opportunity to obtain the medical evaluations and the opinion of the medical advisory committee members and to

argue in her subsequent mandamus action that the board had abused its discretion in relying on one of the medical reports.  Id. at ¶ 31, citing *State ex rel. Haylett v. Ohio Bur. of Workers' Comp.* (1999), 87 Ohio St.3d 325, 332-333, 720 N.E.2d 901.  See also *Mathews v. Eldridge* (1976), 424 U.S. 319, 334-335, 96 S.Ct. 893, 47 L.Ed.2d 18 (in determining what process is due, factors include the value, if any, of additional procedural safeguards).

{¶ 26} As in *VanCleave*, Cydrus received the requisite due process:  (1) after the retirement board initially decided to terminate her disability-retirement benefits, the board notified her of its decision and the availability of appeal, (2) she was given the opportunity to submit to the board additional objective medical evidence in support of her appeal, and she did so by providing Dr. Sylvester's report, (3) after the retirement board denied her appeal and upheld its decision terminating her benefits, she was able to challenge the decision in this mandamus case, and (4) the medical advisors' recommendations and the board's decisions were available to her and indicated reliance on the examination reports by Dr. Steiman and Dr. Clary.  Indeed, unlike the claimant in *VanCleave*, Cydrus did not have the opportunity for a personal appearance upon reconsideration, and the board did not request another medical evaluation for her appeal.  But these are insignificant distinctions.  Cydrus raised claims both in the court of appeals and in this appeal that the retirement board had abused its discretion by relying on Dr. Steiman's report and ignoring Dr. Sylvester's report.  As in *VanCleave*, it is unclear here how Cydrus's mandamus claim has been prejudiced by the lack of a more descriptive retirement board decision.

{¶ 27} Therefore, neither the separation-of-powers doctrine nor due process requires that the retirement board support its decision terminating Cydrus's disability-retirement benefits by specifically identifying the evidence it relied upon and explaining the reasons for its decision.  The retirement board does not have a clear legal duty in this regard, and Cydrus is not entitled to the

requested extraordinary relief in mandamus to compel the board to provide a more detailed decision.

### C. *Evidence Supporting Board's Decision*

**{¶ 28}** To be entitled to the requested writ of mandamus to compel the retirement board to vacate its decision terminating her disability-retirement benefits, Cydrus must establish that the board abused its discretion. See *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254, 899 N.E.2d 975, ¶ 25. To prove an abuse of discretion, she must show that the retirement board's decision was unreasonable, arbitrary, or unconscionable. Id. In addition, the retirement board does not abuse its discretion if there is sufficient evidence to support its determination. *State ex rel. Lucas Cty. Bd. of Mental Retardation & Dev. Disabilities v. Pub. Emps. Retirement Bd.*, 123 Ohio St.3d 146, 2009-Ohio-4694, 914 N.E.2d 1038, ¶ 16.

**{¶ 29}** Cydrus asserts that the retirement board abused its discretion by relying on Dr. Steiman's report in its decision. She dismisses the report as irreconcilable with the ongoing medical reports of her treating physicians and a prior report of a retirement system medical advisor. She describes the report as "complete nonsense" for opining that her headaches were not work-prohibitive because they were subjective.

**{¶ 30}** These assertions lack merit. Nothing in R.C. 145.362 or Ohio Adm.Code 145-2-23 requires the retirement board to credit the findings of either Cydrus's treating physicians or one of the consultative physicians over the findings of a different independent medical examiner. See, e.g., *Pipoly*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 26 (construing an analogous retirement-disability provision). Notably, other doctors who had examined Cydrus in the past and whose reports are also part of the retirement board's records expressed opinions that were similar to those held by Dr. Steiman. And Dr. Steiman's emphasis on the lack of objective medical evidence to support

Cydrus's medical claims is not fatal. "[E]ven for medical conditions with symptoms that are often unsupported by objective medical evidence, 'subjective complaints are not conclusive of disability, and objective medical evidence is still relevant to a determination of the severity of the condition.' " *Morgan*, 121 Ohio St.3d 324, 2009-Ohio-591, 904 N.E.2d 506, ¶ 23, quoting *VanCleave*, 120 Ohio St.3d 261, 2008-Ohio-5377, 898 N.E.2d 33, ¶ 47.

**{¶ 31}** Therefore, the retirement board did not abuse its discretion by relying on Dr. Steiman's medical report in terminating Cydrus's disability-retirement benefits. It constituted sufficient evidence to support the board's determination.

### D. *The Board's Finding*

**{¶ 32}** Cydrus claims that the retirement board also abused its discretion by failing to consider the new additional medical evidence she submitted in support of her appeal of the board's termination of her disability-retirement benefits. She asserts that the retirement board ignored the report of her treating physician, Dr. Sylvester. Ohio Adm.Code 145-2-23(B)(3) requires that a recipient of disability-retirement benefits whose benefits have been terminated support an appeal of the decision with "additional objective medical evidence," Ohio Adm.Code 145-2-23(B)(3)(b), which is defined as "current medical evidence documented by a licensed physician specially trained in the field of medicine covering the illness or injury for which the disability is claimed [that] has not been considered previously by the retirement board." Ohio Adm.Code 145-2-23(B)(3)(d).

**{¶ 33}** The board, however, specified that the decision was "[b]ased upon all the medical information and recommendations." It was free to discount Dr. Sylvester's report because the imaging results she cited were not provided to the board until after the deadline for submission under Ohio Adm.Code 145-2-

23(B)(3) had expired. As Dr. Sylvester noted, the neurosurgeon who issued the new imaging report concluded that Cydrus's medical condition was stable.

{¶ 34} Under these circumstances, the retirement board did not abuse its discretion by determining that Cydrus had not submitted sufficient objective evidence of permanent disability entitling her to the continuation of her disability-retirement benefits. She did not submit sufficient evidence to overcome the presumption that the retirement board acted properly by considering and rejecting Dr. Sylvester's recommendation. See *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 29, quoting *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590, 50 O.O. 465, 113 N.E.2d 14 (" 'in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner' ").

**Conclusion**

{¶ 35} Based on the foregoing, the retirement board and retirement system did not act in an arbitrary, unconscionable, or unreasonable manner in terminating Cydrus's disability-retirement benefits. Therefore, we affirm the judgment of the court of appeals denying the requested extraordinary relief in mandamus.

Judgment affirmed.

BROWN, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Charles Zamora Co., L.P.A., and Charles Zamora, for appellant.

Richard Cordray, Attorney General, and Dennis P. Smith Jr. and Hilary R. Damaser, Assistant Attorneys General, for appellees.

_____