NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0470n.06

No. 15-4035

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| REGINA KAHLES, et al., | ) | |
| | ) | **FILED** |
| Plaintiffs-Appellants, | ) | Aug 15, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| CITY OF CINCINNATI, | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:    DAUGHTREY, KETHLEDGE, STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. In two separate lawsuits, a total of ten plaintiffs, all former employees of the City of Cincinnati, alleged that the City and the Board of Trustees of the Cincinnati Retirement System (CRS), by altering the qualifications for "disability retirement" for city employees, violated provisions of the federal and state constitutions, as well as Ohio state law. After consolidating the two actions, the district court granted summary judgment to the defendants[1] on all federal claims and on the plaintiffs' claim that the City's changes in the retirement plan violated the Ohio Constitution's prohibition on retroactive legislation. *See* Ohio Const., art. II, § 28. The district court declined to exercise supplemental jurisdiction over the remaining state-law claims.

---

[1] The district court dismissed the Board as a defendant, ruling that the Board cannot sue or be sued in its own right. The plaintiffs do not now contest that determination, leaving only the City of Cincinnati as a named defendant in this appeal.

Before this court, the plaintiffs reiterate their assertion that the City's actions that stripped them of their disability-retirement status amounted to a procedural-due-process violation by infringing upon vested rights without providing adequate pre-deprivation and post-deprivation protections. The plaintiffs also contend that the City's alteration of the qualifications necessary to obtain disability benefits contravened the mandate of Article II, Section 28 of the Ohio Constitution that restricts the power of state legislative bodies to pass retroactive laws. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Each of the ten plaintiffs—Regina Kahles, Ronald Bear, Benjamin Cohee, Yvonne Biggs, Norma Ayers, Tina Head, Robert Rechel, Paul Rechtin, William Huxell, and Norma Ragland— formerly had been employed by the City of Cincinnati and were eligible to participate in the City's retirement plan that was administered by the Board of Trustees of the Cincinnati Retirement System. The Cincinnati Municipal Code (CMC) provided that employees like the plaintiffs, who had accumulated sufficient creditable service and who were "disabled by reason of an accidental or nonaccidental cause," could be retired "on a disability retirement allowance" "provided the medical director after a medical examination of such member shall certify that such member is mentally or physically incapacitated for the further performance of duty, and such incapacity is likely to be permanent, and such member should be retired." CMC § 203-41.

Between 1991 and 2010, either the Board's medical director or the Board itself determined that each of the plaintiffs was sufficiently disabled to retire on a disability retirement allowance. Such a determination, however, did not create an expectation that the benefits could not be terminated. In fact, section 203-55 of the CMC then in effect provided explicitly:

> Should the medical director or such competent physician designated by the board
> report and certify to the board that a disability beneficiary is able to engage in a

> gainful employment *paying not less than the prevailing compensation for the employment classification held by such disability beneficiary at the time of retirement*, and should the board concur in such report, then such beneficiary's retirement allowance shall cease.

(Emphasis added.) Moreover, that same section of the municipal code noted that "[o]nce each year after the retirement of a member on a retirement allowance for disability, the board may . . . require any disability beneficiary who has not yet attained age 60 to undergo a medical examination."

Despite being authorized since 1962 to request such disability audits, the Board actually required very few re-examinations of former employees on disability retirement. In fact, Paula Tilsley, the pension fund manager for the City's retirement system, declared in a sworn affidavit that no audits were finalized in 2009 or, presumably, in 2010 or 2011. She stated further, "In 2012, there were 16 disability audits. In 2013, there were 20 disability audits. In 2014, there were 2 disability audits."

The increase in the number of disability audits coincided with the consideration and passage of an amended section 203-55 of the municipal code, effective April 10, 2013. The new provision removed the language that previously had permitted an employee to obtain a disability retirement allowance if unable to engage in gainful employment that paid at least the prevailing compensation for the job at the time of the employee's retirement. In its place, the City adopted language that required termination of disability retirement allowances should the Board's medical director "recommend to the board that a disability beneficiary is able to engage in *a* gainful employment," regardless of the level of compensation. (Emphasis added.) According to Tilsley, the reason for the change in the definition of "disability" in the municipal code provision "was to make sure that the CRS Board's interpretation was in line with industry best practices."

Pursuant to the policies and procedures adopted by the CRS Board, the audit process is initiated by a letter directing the retiree to send all pertinent medical records to the Board's medical director, Dr. Paul Hogya,[2] and to report to Hogya within 30 days for a medical examination. At the conclusion of that examination, Hogya must prepare a report summarizing his findings and recommending that disability benefits either be continued or terminated. Hogya then submits his report and recommendation to a committee of the Board, which reviews Hogya's submissions and makes its own recommendation to the full Board on the propriety of continued benefit payments. Should the Board vote to terminate payments, the employee is informed of his or her appeal rights, which include the opportunity to submit to Hogya, in a timely manner, any additional medical evidence bearing on the employee's medical condition. Hogya must examine any new submissions and again draft a report to the full Board recommending that the appeal be granted or denied. The Board's vote on Hogya's recommendation constitutes the final administrative say in the matter.

After the disability retirement allowance for each of the ten plaintiffs was terminated through this audit process, the aggrieved retirees sought legal redress for the loss of their benefits. Plaintiffs Kahles, Bear, Cohee, Biggs, Ayers, and Head filed suit in federal district court, raising the following claims: a facial procedural-due-process challenge; an as-applied procedural-due-process challenge; a substantive-due-process challenge; a claim that the changed definition of "disability" in the municipal code constituted a retroactive application of a statute in violation of the Ohio Constitution; a § 1983 civil-conspiracy claim; and a state-law breach-of-fiduciary-duty claim. *See Kahles, et al. v. City of Cincinnati, et al.*, No.1:13-cv-560 (S.D. Ohio

---

[2] Although Hogya serves as the Board's medical director, he operates more like an independent contractor and not an employee of the City. In fact, he estimated that in the four or five years prior to his April 2015 deposition in this litigation, only one to eight percent of his "professional work week was devoted to City of Cincinnati work." (Page ID 519)

2014).  A second group of plaintiffs consisting of Rechel, Rechtin, Huxell, and Ragland filed a similar lawsuit in Ohio state court, raising the same causes of action as the *Kahles* complaint, but also including claims for a writ of mandamus, breach of contract, unjust enrichment, declaratory judgment, and an unconstitutional taking of property.  *See State of Ohio ex rel. Rechel v. City of Cincinnati*, No. A 1400704 (Ohio Ct. of Common Pleas Mar. 5, 2014).

The *Rechel* complaint was removed to federal court, the two lawsuits were consolidated, and both sides moved for summary judgment.  The district court found no merit to any of the plaintiffs' due process claims, to the claim that the City had violated Article II, Section 28 of the Ohio Constitution by passing a law with retrospective application, or to the *Rechel* plaintiffs' federal-constitutional takings claim.  The district court thus granted summary judgment to the City on those causes of action.  Because the plaintiffs did not oppose dismissal of their claims for civil conspiracy, unjust enrichment, and breach of fiduciary duty, the court granted judgment in favor of the City on those allegations as well.  Having disposed of all federal claims raised by the plaintiffs, the district court declined to exercise supplemental jurisdiction over the *Rechel* plaintiffs' other state-law claims and remanded them to state court for resolution.  On appeal, the plaintiffs now allege error only in the district court's resolution of their procedural-due-process allegations and of the claim of a violation of the provisions of Article II, Section 28 of the Ohio Constitution.

## DISCUSSION

**Standard of Review**

We review *de novo* a district court's grant of summary judgment.  *See Dodd v. Donahoe*, 715 F.3d 151, 155 (6th Cir. 2013).  Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). A non-moving party cannot withstand summary judgment, however, by introduction of a "mere scintilla" of evidence in its favor. *Id.*

In this case, the plaintiffs and the defendant each moved for summary judgment, asserting that no genuine disputes of fact remained to be resolved. We have recognized that "summary judgment [is] not necessarily appropriate solely because the parties filed cross-motions for summary judgment." *B.F. Goodrich Co. v. U.S. Filter Corp.* 245 F.3d 587, 593 (6th Cir. 2001). Nevertheless, here, the parties agree on the operative facts of the case. Only the proper application of the relevant law to those facts remains in dispute, making a grant of summary judgment to one party or the other appropriate.

**Due Process Claim**

Despite the wide-ranging procedural and substantive due process claims set forth in their complaints in this litigation, the plaintiffs limit their appellate argument on this subject to their assertion that the City failed to provide them with adequate opportunities to challenge Hogya's determinations that the plaintiffs no longer meet the municipal code's definition of employees eligible for disability retirement benefits. Specifically, the plaintiffs claim that their procedural-due-process rights have been violated because Hogya serves both as the initial auditor of the members' disability status and as the sole physician who evaluates any appeal from his own determination. In a similar vein, the plaintiffs contend that the lack of any independent review of

Hogya's decision denies them the opportunity to challenge effectively any erroneous decision by the City's medical director.

In an effort to highlight the procedural trap in which the plaintiffs claim they find themselves, they point to the deposition testimony of Hogya that he could not recall ever reversing one of his initial disability recommendations. The plaintiffs also direct us to the deposition testimony of Cheryl Volk, an administrative technician in the retirement division of the department of the city manager. Volk claimed that she likewise was unaware of any disability appeals that have been granted in the audit process. Furthermore, we note that Paula Tilsley stated in her affidavit, "Of the 31 people whose disability retirement allowance ceased after being audited, 4 did not appeal, and 10 appealed but did not submit additional medical evidence. The remaining appeals were denied." Even so, Tilsley went on to explain that the Board had overturned Hogya's recommendation on three occasions involving the doctor's denial of *initial* disability retirement applications.

Although the plaintiffs understandably believe that they should continue to receive the disability retirement allowances originally awarded to them, and although they point out that some of the plaintiffs have suffered deteriorating medical conditions since their retirement, they do not contend that Hogya's audit determinations of their disability status are incorrect *in light of the new standard adopted in the municipal code*. Additionally, plaintiffs' arguments that the appeal process creates a serious risk of an erroneous deprivation of benefits because Hogya is the sole evaluator of his own medical findings on appeal and because no independent review of Hogya's appellate decision is available to the retirees are without merit.

First, although Hogya is indeed the only person who actually rules on the merits of the appeal during the internal, administrative process, it is untrue that no other medical professionals

have an effective say in the audit determination. Hogya testified in his deposition that he reviews all additional medical evidence that a retiree submits in support of a claim for continued disability retirement allowances. Moreover, as Tilsley explained, "During the appeals process . . ., people are permitted to submit *as much additional medical evidence as they wish*." (Emphasis added.)

Second, the plaintiffs likewise misstate the level of independent review to which Hogya's administrative audit determinations are subject. As the Ohio Supreme Court reaffirmed in *State ex rel. Cydrus v. Ohio Public Employees Retirement System*, 938 N.E.2d 1028, 1032 (Ohio 2010), "mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." (Quoting *State ex rel. Pipoly v. State Teachers Ret. Sys.*, 767 N.E.2d 719, 722 (Ohio 2002)). Although *Cydrus* involved a challenge to a decision of the Board of the Ohio Public Employees Retirement System, and not to a determination of the Board of the CRS, the situation in *Cydrus* is analogous to that faced by the plaintiffs here: "The determination of whether a . . . member is entitled to the continued receipt of disability-retirement benefits is within the exclusive authority of the . . . board, and the board's denial of an appeal from the termination of these benefits is final and not subject to appeal." *Id.* at 1032 (citations omitted). Consequently, "[b]ecause there is no right to appeal the . . . board's decision terminating disability-retirement benefits, mandamus is an appropriate remedy." *Id.* Thus, the plaintiffs are not without recourse to seek review to determine whether Hogya abused the discretion with which he was vested.

By now, it is well established that "[t]he essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (citation and internal quotation marks

omitted). In order to comport with constitutional mandates, "[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard to insure that they are given a meaningful opportunity to present their case." *Id.* at 349 (citation and internal quotation marks omitted).

The plaintiffs in this matter do not contend that they did not receive adequate notice of the Board's intent to audit their entitlement to future disability retirement allowances. Furthermore, pursuant to the procedures established by the Board for the audit, the plaintiffs were permitted—within a designated, reasonable time period—to present whatever medical evidence they could muster to contradict Hogya's initial determination that they were "able to engage in a gainful occupation." Finally, under Ohio legal principles, the plaintiffs were able to seek a writ of mandamus in the state-court system to challenge any alleged abuse of discretion on the part of the City's medical director in reaching his conclusions. The plaintiffs thus received the process to which they were due, and their appellate challenge in this regard fails.

**Retroactivity Claim**

The plaintiffs also argue that Ordinance No. 83-2013, which altered the Cincinnati Municipal Code's definition of "disability" used to determine eligibility for disability retirement allowances, constituted a retroactive law in violation of Article II, Section 28 of the Ohio Constitution. Pursuant to that constitutional proscription, "The general assembly shall have no power to pass retroactive laws," a prohibition that applies with equal force to alterations to charter amendments. *See State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 647 N.E.2d 769, 772 (Ohio 1995).

Under Ohio law, "a retroactive law is defined as one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches

a new disability, in respect to transactions or considerations already past." *State ex rel. Jordan v. Indus. Comm'n of Ohio*, 900 N.E.2d 150, 151-52 (Ohio 2008) (citation and internal quotation marks omitted). "A vested right is one that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." *Id.* at 152 (citations and internal quotation marks omitted). In other words, a right will not be considered "vested" "unless it constitutes more than a mere expectation or interest based upon an anticipated continuance of existing laws." *Id.* (citations and internal quotation marks omitted).

Recitation of the characterization of "vested rights" under Ohio law highlights the weakness of the plaintiffs' argument on this issue. Even prior to the passage of Ordinance 83-2013, individuals on disability retirement were subject to possible annual audits, the results of which could strip them of future benefits. The plaintiffs' concession in their brief that the City retained the authority to alter the eligibility requirements for receiving such benefits, further established that the plaintiffs' insistence on a continuation of the status quo was nothing more than a "mere expectation . . . based upon an anticipated continuance of existing laws."[3] Moreover, any rights or interests the plaintiffs possessed in benefits already received were not infringed by the passage of Ordinance 83-2013. Cheryl Volk testified that the changes in the audit process were to be applied prospectively only, and the plaintiffs offer no evidence that the City has made or intends to make any effort to recoup benefit payments made prior to audit determinations following the amendment to the ordinance.

The plaintiffs claim that they "had a settled, reasonable expectation that, absent an actual improvement in their physical conditions, they would continue to receive their disability benefits." Nothing in the plaintiffs' earlier benefit grants or in the prior version of CMC § 203-

---

[3] The plaintiffs contend, however, that any changes in the audit standards are applicable only to audits conducted on those individuals who sought an *initial* determination of eligibility for benefits after the effective date of the amendment.

55 offers support for an assertion that, but for an improvement in the plaintiffs' physical conditions, their disability retirement allowances could not be terminated. In fact, both the prior and the present versions of CMC § 203-55, when setting forth the authority of the Board to request an annual medical examination of recipients of such benefits, provide:

> Should any disability beneficiary who has not yet attained the age of 60 refuse to submit to at least one medical examination in any such year by the medical director or physician designated by the board, *the beneficiary's allowance may be discontinued* until withdrawal of such refusal; and should the refusal continue for one year, *all such beneficiary's rights in and to a pension may be revoked by the board.*

(Emphasis added.)

Clearly, therefore, the plaintiffs were on notice that their receipt of benefits could terminate for reasons other than improvement in their medical conditions. Consequently, any expectation on their part of continued receipt of benefits absent a return to relative health was not reasonable. Furthermore, under Ohio law, because the amendments to CMC § 203-55 were prospective in their application, the City did not contravene the mandate of Article II, Section 28 of the Ohio Constitution by updating the working definition of "disability" in order to conform "with industry best practices."

### CONCLUSION

For the reasons stated, the Board's denials of the plaintiffs' appeals of the discontinuances of their disability retirement allowances were not finalized without the plaintiffs being accorded the procedural process they were due. Furthermore, under Ohio law and the facts of this case, the City's decision to alter the standard by which an individual's disability status would be determined and subsequent payments would be made did not amount to an improper implementation of a retrospective law. We therefore AFFIRM the judgment of the district court.