[Cite as *State ex rel. Lewis v. Ohio Pub. Emps. Retirement Sys.*, 2025-Ohio-525.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Bret E. Lewis, | : | |
| Relator, | : | |
| v. | : | No. 23AP-80 |
| The Ohio Public Employees Retirement System, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on February 18, 2025

**On brief:** *Hanna Rasnick Evanchan Palmisano Hobson & Fox, LLC*, and *Scott M. Kolligian*, for relator.

**On brief:** *Dave Yost,* Attorney General, *Samuel A. Peppers, III*, and *Lisa A. Reid*, for respondent.

IN MANDAMUS

BOGGS, J.

{¶ 1} Relator, Bret E. Lewis, seeks a writ of mandamus ordering respondent, the Ohio Public Employees Retirement System ("OPERS"), to vacate its order that denied his request for disability benefits and to enter an order granting said benefits. For the following reasons, we deny his request for a writ of mandamus.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate considered the action on its merits and issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concluded that Lewis did not establish that he was entitled to a writ of mandamus through clear and convincing evidence that he had a clear legal right to the

requested relief, that there was a clear legal duty for OPERS to provide that relief, and that there was a lack of an adequate remedy in the ordinary course of the law.

{¶ 3} No objections have been filed to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision unless the court determines that there is an error of law or other defect evident on the face of the decision." Civ.R. 53(D)(4)(c).

{¶ 4} Upon review, we find no error in the magistrate's findings of fact or conclusions of law. Therefore, we adopt the magistrate's decision, including the findings of fact and the conclusions of law therein, as our own and conclude that Lewis has failed to establish a right to a writ of mandamus.

*Petition for writ of mandamus denied.*

BEATTY BLUNT and MENTEL, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Bret E. Lewis, | : | |
| Relator, | : | |
| v. | : | No. 23AP-80 |
| The Ohio Public Employees Retirement System, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

MAGISTRATE'S  DECISION

Rendered on October 21, 2024

*Hanna Rasnick Evanchan Palmisano Hobson & Fox, LLC*, *Scott M. Kolligian*, for relator.

*Dave Yost*, Attorney General, *Samuel A. Peppers, III*, and *Lisa A. Reid*, for respondent.

IN MANDAMUS

{¶ 5}  Relator, Bret E. Lewis, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, The Ohio Public Employees Retirement System ("OPERS"), to vacate its order that denied his request for disability benefits, and to enter an order granting said benefits.

Findings of Fact:

{¶ 6}  1. In August 2020, relator contracted COVID-19, while employed by his employer, Central Ohio Transit Authority ("COTA"), as a bus operator.

{¶ 7}   2. COTA participates in the OPERS retirement system.

{¶ 8}   3. In a February 24, 2021, report, Shengyi Mao, M.D., reported the following with regard to relator: has not worked since September 9, 2020; fatigue; brain fog; backed out of his driveway and hit a fence in December, which he has never done before; work has not allowed adjustments to his schedule and duties; constantly tired; forgets things; occasional joint pain; tightness in the chest; gets tired easily; gets tired vacuuming; walks about 2 miles per day but used to do 5 to 10 miles; more anger; loss of appetite; and trouble sleeping.

{¶ 9}   4. In an April 6, 2021, progress note, Dr. Mao reported the following with regard to relator: fatigue; brain fog; long-haul COVID symptoms; lack of focus; eating better; and going to park daily.

{¶ 10}  5. In a June 18, 2021, report, Dr. Mao reported the following with regard to relator: mood changes; some walking for exercise; fatigue; brain fog; long-haul COVID symptoms; lack of focus; stiffness; walks everyday but feels exhausted; grocery shopping completely wears him out; and hypertension is worse in mornings.

{¶ 11}  6. Relator attempted to return to work in August 2021.

{¶ 12}  7. In an August 23, 2021, progress note, Dr. Mao indicated the following with regard to relator: hypertension and blood pressure has been great; started back at work at the beginning of August and has been working eight- to nine-hour shifts five days per week, which he gets through okay but feels pretty exhausted at the end of the day; first day back at job, he missed a passenger; not sure if he has improvement in fatigue/brain fog; work is going okay; mood is better; sleep is poor; walking 11,000-15,000 steps per day; and some pushups/weights daily.

{¶ 13}  8. In a September 27, 2021, progress note, Dr. Mao indicated the following with regard to relator: his tests indicated anxiety/depression; he was threatened by coworkers; he did not feel safe at work; gets exhausted easily; and working eight-hour days was difficult.

{¶ 14}  9. In a November 29, 2021, progress note, Dr. Mao indicated the following with regard to relator: still struggling with fatigue; got tired after five hours of work; wants to be seen at the long-haul COVID clinic; and is working eight to nine hours per day.

{¶ 15} 10. A December 13, 2021, a physical-therapy evaluation indicated the following with regard to relator: extreme fatigue and brain fog; heart racing/pounding, which is getting better; tried returning to work for 8-hour days for 1-1/2 months, but then had to sleep for 14 hours when he returned from work; and he feels like he has about 2-4 hours per day to get everyday activities accomplished but then needs a 3-6-hour nap.

{¶ 16} 11. Relator initially saw Harrison L. Jackson, M.D., at the Ohio State University ("OSU") Post-COVID Recovery Clinic, beginning in December 2021. These records indicated the following with regard to relator: meets criteria for post-acute COVID-19 syndrome; fatigue, difficulty concentrating, myalgias, hypertension, and joint pain; post-acute COVID syndrome can cause chronic fatigue, but there can be comorbid conditions that coronavirus has made worse or triggered; and most suspicious about relator's untreated depression and obstructive sleep apnea.

{¶ 17} 12. Dr. Mao's January 3, 2022, progress note indicates the following with regard to relator: no change in level of fatigue; has a four-hour window in which he can do things; does 10 pushups per day and has started home physical therapy; averages 1,700 steps per day; relator thought 10,000-15,000 steps per day that he took when he returned to work were too many; sleeping better; mood is the same; and very agitated about work.

{¶ 18} 13. On February 2, 2022, relator filed a disability benefit application with OPERS.

{¶ 19} 14. On February 16, 2022, Dr. Mao completed a report of physician form, in which he indicated that relator was incapable of performing his job as a COTA bus operator due to COVID long-haul, and he became permanently disabled on December 28, 2021. He also listed other conditions as hypertension, GERD, depression, and PTSD. Dr. Mao stated relator's symptoms include fatigue, brain fog, and shortness of breath. His residual symptoms may be permanent.

{¶ 20} 15. On May 26, 2022, Robert Ferguson, M.D., from Commonwealth Medicine, issued a report, in which he found the following: (1) relator has significant depression and obstructive sleep apnea, which are both commonly associated with subjective complaints of fatigue and cognitive difficulties; (2) relator demonstrated normal exercise capacity for his age; (3) Dr. Jackson's December 2021 evaluation in the OSU Post-COVID Recovery Clinic concluded that although his symptoms could be due to long-haul

COVID, he was concerned about untreated depression and obstructive sleep apnea as the cause; (4) COVID-19 infection is not the primary cause of relator's current complaints of shortness of breath, fatigue, or cognitive difficulties, and, therefore, he is not disabled on the basis of long COVID syndrome; and (5) it is not likely that any of his symptoms that are due to his prior COVID infection will significantly improve at this point.

{¶ 21} 16. On June 13, 2022, OPERS issued a letter denying relator's application. Relator appealed.

{¶ 22} 17. On June 24, 2022, relator requested that a copy of his claim file be sent to his physician and attorney. On July 12, 2022, OPERS mailed the claim file to his attorney; however, only the first 24 pages were full-page copies, while the remaining 232 pages were magnified images of the top-left quadrant of the copied pages.

{¶ 23} 18. Relator requested another copy of his claim file, and OPERS mailed a second copy, dated July 19, 2022. This version contained 144 pages, containing duplicate records and missing several treatment notes that were relied upon by Dr. Ferguson.

{¶ 24} 19. Relator notified OPERS of the above issues with the claim file and requested an extension of time. OPERS mailed a third copy of the claim file to relator's attorney, which was received by relator's attorney on August 17, 2022. This third copy suffered from the same defects as the second copy.

{¶ 25} 20. OPERS denied relator's requests for extension of time so that it could obtain an accurate copy of the claim file. On September 14, 2022, relator requested a fourth copy of the claim file and an extension of time to submit arguments in support of his disability application. OPERS denied the extension and sent a cover letter to relator indicating a copy of the claim file was enclosed with it, but the file was not enclosed.

{¶ 26} 21. After OPERS filed its evidentiary record in the present mandamus action, relator identified, in his April 21, 2023, motion to strike, the following pertinent records that were not included in OPERS's copies sent to him: (1) a February 21, 2022, letter from OSUP General IM Peds Grandview to OPERS informing OPERS that it was unable to comply with a request due to missing information in an authorization; (2) a blank OSU Physicians, Inc., authorization to release medical information form; (3) A CIOX Health cover letter to OPERS regarding confidential information; (4) a February 21, 2022, CIOX Health document showing records from OSUP General IM Peds Grandview were shipped

to OPERS; (5) a CIOX Health invoice for records from OSUP General IM Peds Grandview to UMass Disability Community; (6) 129 pages of medical records from OSU Wexner Medical Center; (7) a June 9, 2022, OPERS board recommendation by Commonwealth Medicine that relator's application be disapproved; (8) a June 12, 2022, OPERS board recommendation by Maurice Mast, M.D., OPERS's medical consultant, that relator's application be disapproved; (9) a June 13, 2022, denial letter from OPERS to COTA ; (10) a June 17, 2022, letter to relator informing him that his disability benefits appeal request form was not properly completed; (11) a four-page OPERS release of account information authorization form; and (12) two cover letters to Dr. Shengyi and two cover letters to relator's attorney relating to requested information enclosures.

{¶ 27} 22. In support of his appeal, on September 19, 2022, relator submitted a September 19, 2022, report of physician, including progress notes up to August 23, 2022, completed by Dr. Mao; pulmonary rehabilitation progress notes dated April 14 through August 25, 2022; and the mental health records from Mark A. Fletcher, M.D., Ph.D., dated May 10 through August 18, 2022.

{¶ 28} 23. Dr. Ferguson recommended in an October 3, 2022, medical disability recommendation that OPERS deny disability, finding the following with regard to relator: (1) although relator complains of brain fog, the record does not suggest relator had any difficulties with the cognitive parts of his job when he returned to work in August 2021; (2) although relator complains of shortness breath, he was walking up to 15,000 steps per day according to Dr. Mao's August 23, 2021, note; (3) fatigue remains a major complaint; (4) relator completed pulmonary rehabilitation and achieved 75 percent of his stated goals; (5) relator's oxygen saturation and good performance on his 6-minute walk test suggests his exercise capacity is sufficient to perform the essential duties of his job as a bus operator; (6) he has obstructive sleep apnea, depression, and PTSD as significant contributing causes for his ongoing fatigue; (7) relator's prior COVID infection is not the primary cause of his ongoing symptoms; (8) he is not disabled on the basis of long-haul COVID syndrome; and (9) the additional medical record information was reviewed and did not cause any change of opinion.

{¶ 29} 24. On October 11, 2022, OPERS issued a letter denying relator's appeal and denying his request for disability benefits.

{¶ 30}  25. On February 2, 2022, relator filed a petition for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 31}  The magistrate recommends that this court deny relator's request for a writ of mandamus.

{¶ 32}  To prevail on his mandamus claim, relator must establish, by clear and convincing evidence: (1) a clear legal right to the requested relief; (2) a clear legal duty on the part of OPERS to provide that relief; and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Domhoff v. Ohio Pub. Emps. Retirement Sys. Bd.*, 140 Ohio St.3d 284, 2014-Ohio-3688, ¶ 13. This requires that relator demonstrate that OPERS abused its discretion by making a decision that was not supported by some evidence. *State ex rel. Willer v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. No. 20AP- 316, 2021-Ohio-4575, ¶ 12. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Ewart v. State Teachers Ret. Sys. Bd. of Ohio*, 10th Dist. No. 20AP-21, 2020-Ohio-4147, ¶ 24.

{¶ 33}  In mandamus, courts will not second-guess the medical expertise of the doctor whose report is under review. *State ex rel. Smith v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. No. 14AP-1060, 2016-Ohio-2731 (magistrate's decision), citing *State ex rel. Young v. Indus. Comm.*, 79 Ohio St.3d 484, 1997-Ohio-162 (1997). The evaluation of the weight and credibility of the evidence before it rests exclusively with OPERS. Id., citing *State ex rel. Thomas v. Indus. Comm.*, 42 Ohio St.3d 31, 33 (1989), citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987).

{¶ 34}  The retirement system board, not physicians, makes the ultimate decisions regarding disability, and a physician's opinion is not conclusive. See *State ex rel. Sanderlin v. State Teachers Retirement Sys.*, 10th Dist. No. 21AP-210, 2022-Ohio-2032 (regarding State Teachers Retirement System of Ohio), citing *State ex rel. Hulls v. State Teachers Retirement Bd.*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26. The retirement system board is not required to accept the views of any particular doctor favored by the claimant, or give greater weight to the claimant's treating physicians. *Id.*, citing *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 24. Ultimately, the existence of contrary evidence is immaterial if there is evidence in support of the retirement

system board's findings of fact. *Sanderlin*, citing *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St.3d 111, 2012-Ohio-46, ¶ 9. Even in the case of an independent examination at the retirement system board's request, the board is permitted to accept the findings presented in the medical reports yet still reject their ultimate conclusions. *Id.*, quoting *State ex rel. Joyce v. State Teachers Retirement Sys. of Ohio*, 10th Dist. No. 20AP-507, 2021-Ohio-4279 (magistrate's decision), quoting *State ex rel. Wegman v. Ohio Police & Fire Pension Fund*, 155 Ohio St.3d 223, 2018-Ohio-4243, ¶ 16.

{¶ 35} R.C. 145.27 and Ohio Adm.Code 145-1-61 address access to medical records and individual case information. R.C. 145.27, entitled "Access to records; match with public assistance recipients," provides, generally, that copies of medical reports or recommendations must be made available to the personal physician, attorney, or authorized agent of the individual concerned upon written release from the individual or the individual's agent. R.C. 145.27(B). Ohio Adm.Code 145-1-61, entitled "Release of names, addresses and individual case information and maintenance of records," provides, generally, that individual case information and medical reports and recommendations may be released to a third party upon written authorization of the member or benefit recipient.

{¶ 36} The general procedure for disability benefits is set forth in the Ohio Revised Code and Ohio Administrative Code. Ohio Adm.Code 145-2-22(H), entitled "Receipt of disability benefits," provides, in pertinent part, that information obtained regarding the disabling condition becomes part of the disability record that is available for review by the medical examiner and medical consultant. Pursuant to R.C. 145.35, in order for an OPERS member to be granted disability benefits, OPERS's examining physician must determine the member is entitled to benefits, OPERS's medical consultant must concur with the examining physician's determination, and the OPERS board must concur with the medical consultant. Ohio Adm.Code 145-2-21(B)(1) requires the OPERS member to submit a report of a physician and any supporting reports to determine his disabling condition. After the medical records are submitted to the examining physician and the OPERS medical consultant and a determination of disability is made, the member may appeal any denial of benefits under Ohio Adm.Code 145-2-23 and must submit additional objective, current medical evidence that has not been considered previously by OPERS.

{¶ 37} In the present case, relator first argues that OPERS deprived him of due process of law by failing to transfer to him evidence upon which it relied in denying his disability application. In support, relator contends the following: a member of OPERS has a protected property interest in his or her disability or retirement benefits and, thus, has the right to procedural due process; procedural due process includes the medical advisors' recommendations and board's decisions being available to the member and an indication of reliance of examination reports, citing *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 127 Ohio St.3d 257, 2010-Ohio-5770; a party is entitled to know the issues on which the decision will turn and to be apprised of the factual material on which the agency relies for decision so that the party may rebut it; relator was entitled to know what evidence OPERS relied upon in determining whether he meets the criteria to be awarded a disability benefit; R.C. 145.27(B) and Ohio Adm.Code 145-1-61 require the release of individual case information with a written authorization; although the certified record contains correspondence from OPERS to relator's counsel dated June 28, 2022, neither relator nor his counsel received a copy of his file or that cover letter; OPERS's first July 12, 2022, transmission of the record contains 232 of 256 pages that were zoomed-in images of one-quarter of the pages; OPERS's second July 19, 2022, transmission of the record contained duplicate medical records and was missing several treatment notes that were relied upon by Dr. Ferguson; OPERS's third August 17, 2022, transmission of the record suffered from the same defects as the second transmission of the record; OPERS's fourth attempted transmission of the record was comprised of a cover letter with no attached records; and, thus, at no point during the application and appeals process did relator ever receive a copy of the evidence contained in the certified records before this court.

{¶ 38} Relator cites the Supreme Court of Ohio's decision in *Cydrus*, to support his due-process argument. The court in *Cydrus* addressed due process in the context of OPERS proceedings. The court found: (1) OPERS does not have any duty based on procedural due process to identify the evidence it relied upon and to explain its reasons for denying disability-retirement benefits; and (2) the following factors established the requisite due process: (a) after the retirement board initially decided to terminate the member's disability-retirement benefits, the board notified the member of its decision and the availability of appeal; (b) the member was given the opportunity to submit to the board

additional objective medical evidence in support of her appeal, and the member did so by providing a doctor's report; (c) after the retirement board denied the member's appeal and upheld its decision terminating her benefits, the member was able to challenge the decision in mandamus; and (d) the medical advisors' recommendations and the board's decisions were available to the member and indicated reliance on the examination reports by two doctors. Relator in the present case contends that his due process was violated by OPERS's failure to comport with the due-process requirement described in (d).

{¶ 39} The magistrate finds *Cydrus* does not aid relator's due-process claim. At the outset, relator's assertion that he was entitled to know what evidence OPERS relied upon in determining his disability application is meritless. As explained in *Cydrus*, OPERS does not have any duty to identify the evidence it relied upon and to explain its reasons for denying disability benefits. Also consistent with *Cydrus*, OPERS notified relator of its decision and the availability of appeal, and he was given the opportunity to submit to OPERS additional objective medical evidence in support of his appeal, and he did so by providing Dr. Mao's progress notes, pulmonary rehabilitation progress notes, and mental health records from Dr. Fletcher. Furthermore, after OPERS denied his appeal and upheld its decision denying benefits, relator was able to challenge the decision in the present mandamus case. Importantly, in his April 21, 2023, motion to strike, although relator claimed that he did not receive the one-page recommendation forms from Drs. Ferguson and Mast in the file copies OPERS delivered to him, he does not allege that he did not have copies of Dr. Ferguson's full recommendation or that he was unaware of the doctors' recommendations. Relator's sole claim on this issue is that the recommendation forms were not included in the file copies sent to him from OPERS. It is clear from relator's motion to strike that he had possession of Dr. Ferguson's full reports recommending that disability be disapproved.

{¶ 40} In addition, the court in *Cydrus* did not make any finding that it is a violation of due process for OPERS, during the pendency of proceedings, to fail to transfer to the member the record of evidence upon which it relied in denying his disability application, which is relator's main argument herein. Indeed, relator fails to cite any authority to support his argument, in this respect. On this issue, OPERS notes that the only substantive medical evidence that relator claims was not included in any of the record copies that

OPERS delivered to him is the OSU medical records, which were relator's own medical records. Given it is apparent that relator possessed or had access to the pertinent medical records and Dr. Ferguson's full recommendation report, he had a full and fair opportunity to review the relevant evidence and challenge OPERS's determinations in this matter. Relator does not endeavor to explain how OPERS's admitted failures to forward complete and legible copies of the record hampered or prejudiced his ability to present arguments in favor of his position. Therefore, the magistrate can find no due-process deprivation based upon OPERS's failure to provide a full copy of the record to relator.

{¶ 41} Relator next argues that OPERS abused its discretion when it issued an unreasonable, arbitrary, and unconscionable decision finding that relator is capable of the performance of his bus operator position. In support of this argument, relator asserts: the medical evidence from Dr. Mao and the OSU Post-COVID Recovery Clinic supports the conclusion that relator attempted to return to work for about 45 days, but he was exhausted and fatigued by the end of the day, and COTA rejected his request to work only eight-hour shifts with no overtime; he suffered from brain fog; he needed breaks to accomplish his activities of daily living; he hit a fence while driving his personal vehicle in December 2020; when he attempted to return to work in August 2021, he missed picking up a passenger; Dr. Ferguson's reports contain internal inconsistencies, in that Dr. Ferguson opined that relator has no limitations, an unlimited ability to frequently lift or carry any amount of weight throughout an eight-hour workday, and can sit, stand, walk, balance, climb, crawl, and kneel without any limitations, yet he states in his recommendation that it is not likely that any of his symptoms that are due to his prior COVID infection will show any further improvement; and it is clear that Dr. Ferguson felt that relator was still struggling with symptoms and limitations as a direct result of his long-haul COVID diagnosis, but he failed to assign any limitations.

{¶ 42} Relator's arguments are without merit. The gist of relator's arguments is that OPERS should have believed the medical evidence he presented over the evidence OPERS relied upon. Relator asks this court to find Dr. Mao and the OSU Post-COVID Recovery Clinic were more credible and persuasive than Drs. Ferguson and Mast. That is not the role of this court in mandamus. Although relator's medical evidence could support a disability determination, if believed, OPERS instead found the recommendations of Drs. Ferguson

and Mast more credible. To be sure, those recommendations, particularly Dr. Ferguson's full reports, support OPERS's decision to deny relator disability benefits. Although the medical evidence does support that relator suffered from brain fog and fatigue, Dr. Ferguson believed that the record did not support that he had any difficulties with the cognitive parts of his job when he returned to work in August 2021, he was walking up to 15,000 steps per day in August 2021, he completed pulmonary rehabilitation and achieved 75 percent of his stated goals, testing suggested that his exercise capacity is sufficient to perform the essential duties of his job as a bus operator, and his primary cause of ongoing fatigue was not COVID but several other health issues that contributed to his fatigue. Dr. Ferguson's opinions clearly could be relied upon by OPERS to support a denial of disability benefits.

{¶ 43} Relator's complaint that Dr. Ferguson's reports contain internal inconsistencies is unfounded. There is no inconsistency in Dr. Ferguson's finding that relator's COVID symptoms may be permanent, yet he is not disabled by them. Merely because relator may not see any further improvement in his COVID symptoms does not mean he necessarily has work limitations. Relator may have some level of fatigue or brain fog from COVID that may persist indefinitely, but that level may not be so severe as to impact his lifting, carrying, sitting, standing, walking, balancing, climbing, crawling, and kneeling. Importantly, Dr. Ferguson believed relator's other health issues were contributing causes to his fatigue. Therefore, the magistrate finds no inconsistency in Dr. Ferguson's findings.

{¶ 44} Accordingly, it is the magistrate's recommendation that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.