[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Wegman v. Ohio Police & Fire Pension Fund,* Slip Opinion No. 2018-Ohio-4243.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4243

THE STATE EX REL. WEGMAN, APPELLANT, *v.* OHIO POLICE & FIRE PENSION FUND, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Wegman v. Ohio Police & Fire Pension Fund,* Slip Opinion No. 2018-Ohio-4243.]**

*Disability benefits—Mandamus—Ohio Police & Fire Pension Fund board did not abuse its discretion in denying certain benefits—Court of Appeals' judgment affirmed.*

(No. 2017-0141—Submitted January 23, 2018—Decided October 23, 2018.)

APPEAL from the Court of Appeals for Franklin County, No. 16AP-112, 2016-Ohio-8270.

_____

**KENNEDY, J.**

{¶ 1} Appellant, Donald A. Wegman, appeals from a judgment of the Tenth District Court of Appeals denying a writ of mandamus to compel appellee, the Ohio Police & Fire Pension Fund (the "fund"), to award him on-duty-percentage

disability benefits for certain injuries that he alleges were sustained on the job. Because the fund's board of trustees did not abuse its discretion in denying those benefits, we affirm the judgment of the court of appeals.

**Facts and Procedural History**

{¶ 2} Wegman worked for Anderson Township as a firefighter from 1997 until March 1, 2014, and he is a member of the fund, which provides disability benefits and pensions to its members as well as their spouses, children, and dependent parents. *See* R.C. 742.02. On February 23, 2015, he filed an application seeking disability benefits for various medical conditions, including injuries to his right shoulder and left knee, heart disease, and depression and anxiety. Except for the injury to his left knee, which occurred after he resigned, he attributed these conditions to his occupation.

{¶ 3} Merris T. Young, M.D., examined Wegman and prepared a report opining that he was permanently disabled. The form instructed Dr. Young to use the American Medical Association's *Guides to the Evaluation of Permanent Impairment* ("AMA Guides") as the framework for evaluating permanent impairments, and referencing tables in the AMA Guides, he estimated Wegman's "Whole Person Impairment" to be 36 percent, based on the following disability percentages:

- Left Knee        11 percent
- Heart                 10 percent
- Right Shoulder    11 percent
- Eyes                 5 percent
- Hearing           0 percent
- Lumbar Back      5 percent
- Thoracic Back      0 percent

**{¶ 4}** The board referred Wegman to vocational expert Robert E. Breslin, who interviewed Wegman and concluded that he was "unable to return to his former occupation of Firefighter" and "has significant physical restrictions that will limit him to a range of sedentary work activity at best."

**{¶ 5}** James Talmadge, M.D., reviewed Wegman's medical records and prepared a medical report for the board. Concluding that Dr. Young's rating was not correct, he determined that the left-knee impairment should have been rated at 4 percent and that the right-shoulder impairment should have been 0 percent. Dr. Talmadge concluded that Wegman's back pain, heart condition, and vision impairment were not disabling and agreed with the disability percentages that Dr. Young had provided on those conditions. He then calculated Wegman's Whole Person Impairment to be 4 percent.

**{¶ 6}** The board secured a second vocational opinion from Michael A. Klein, Ph.D., who reviewed the medical and vocational evaluations supplied to him and characterized the damage to Wegman's earning capacity as "moderate."

**{¶ 7}** The Disability Evaluation Panel reviewed these evaluations, determined that Wegman's disability was not caused by Wegman's employment as a firefighter, and recommended an 8 percent disability benefit (the 4 percent Whole Person Impairment calculated by Dr. Talmadge multiplied by 2 for moderate earning-capacity damage). Relying on "the entire record which includes [Wegman's] personal history file and medical evidence obtained in conjunction with [the] application for disability benefits," the board granted Wegman off-duty disability retirement, with an annual benefit of 8 percent of his average annual salary.

**{¶ 8}** Wegman appealed the board's decision based on four conditions: heart disease, right-shoulder injury, left-knee injury, and "anxiety/depression." As supplemental evidence, he submitted a report prepared by Denver Stanfield, M.D., who noted that an MRI of Wegman's right shoulder showed a tearing of the rotator

cuff, a chronic tear of the superior labrum (the cartilage around the shoulder socket), arthritis, and capsulitis. Wegman also submitted a report from Terry Glendening, Ph.D., his treating psychologist, attesting to Wegman's impairment from posttraumatic stress disorder from the hazards of firefighting and a hostile workplace environment. Dr. Glendening also referred to another physician's report that job-related stress from Wegman's employment may have been a factor for his heart condition. Finally, Wegman provided a letter from retired Battalion Chief Paul Cunningham describing the verbal and, in one case, physical abuse that Wegman experienced in the workplace.

{¶ 9} The board arranged for Wegman to be examined by W. Kent Soderstrum, M.D., who assessed a 10 percent impairment for the heart condition, 9 percent for the right shoulder, 5 percent for the low back, and 10 percent for the left knee. Relying on the AMA Guides, Dr. Soderstrum estimated that Wegman had a Whole Person Impairment of 31 percent. Thomas M. Evans, Ph.D., provided the board a psychological assessment, estimating a 10 percent Whole Person Impairment caused by Wegman's dysthymic disorder and anxiety disorder, which each had a 10 percent impairment score according to the AMA Guides. Breslin, the vocational expert who had previously evaluated Wegman, reviewed the new evidence and provided an addendum report maintaining his opinion that Wegman's abilities would restrict him to "sedentary and light, unskilled occupations." Bruce S. Growick, Ph.D., also submitted a vocational recommendation indicating that Wegman had sustained moderate wage loss from his disabilities.

{¶ 10} Gregory Jewell, M.D., the board's medical advisor, issued a recommendation based on his review of the records. Dr. Jewell's report contains a column for "Diagnosis" and a column for "Impairment %," as well as four lines designated by the letters "(a)," "(b)," "(c)," and "(d)." In the "Diagnosis" column, Dr. Jewell wrote "Left-Knee-Quadriceps Rupture," "Cardiac Arrhythmia," "Right Shoulder," and what appears to be the Greek letter "Ψ" or "psi," which can be

4

shorthand for psychology*,* psychiatry, or psychological. *See* https://en.wikipedia.org/wiki/Psi_(letter)#Use_as_a_symbol (accessed July 30, 2018); Andrew Colman, *What is Psychology?* 45 (3d Ed.2016). Dr. Jewell assessed a 6 percent left-knee impairment, a 9 percent impairment due to cardiac arrhythmia, a 9 percent impairment for the right shoulder, and 0 percent impairment for the psychological conditions. He concluded that only the knee condition was disabling, and he estimated Wegman's Whole Person Impairment to be 6 percent.

{¶ 11} Following a hearing and after stating that it had reviewed the evidence, the board awarded an off-duty disability benefit of 12 percent of Wegman's average annual salary based on Dr. Jewell's medical recommendation and Dr. Growick's vocational recommendation.

{¶ 12} Wegman filed a complaint for a writ of mandamus in the Tenth District Court of Appeals. He challenged the board's decision not to award on-duty disability benefits for his right shoulder and his psychological conditions. The court of appeals referred the matter to a magistrate, who recommended denying the writ of mandamus. Wegman filed timely objections, but the court of appeals overruled the objections and adopted the magistrate's decision.

{¶ 13} Wegman appealed to this court as of right.

**Law and Analysis**

{¶ 14} To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Love v. O'Donnell*, 150 Ohio St.3d 378, 2017-Ohio-5659, 81 N.E.3d 1250, ¶ 3.

{¶ 15} "Because the final board decision is not appealable, mandamus is available to correct an abuse of discretion by the board in denying disability-retirement benefits." *State ex rel. Worrell v. Ohio Police & Fire Pension Fund*, 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, ¶ 10. An abuse of discretion

occurs when a decision is unreasonable, arbitrary, or unconscionable. *Id.* We have recognized that the board abuses its discretion when it "enter[s] an order which is not supported by 'some evidence.' " *Kinsey v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 49 Ohio St.3d 224, 225, 551 N.E.2d 989 (1990). "Only if the board's decision is not supported by *any* evidence will mandamus lie." (Emphasis sic.) *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 144 Ohio St.3d 367, 2015-Ohio-3807, 43 N.E.3d 426, ¶ 17.

{¶ 16} Pursuant to R.C. 742.38 and Ohio Adm.Code 742-3-05, the board is "vested with the exclusive authority to evaluate the weight and credibility of the medical evidence in determining a member's entitlement to disability-retirement benefits." *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St.3d 111, 2012-Ohio-46, 961 N.E.2d 178, ¶ 7. And because we are reviewing the board's decision for some evidence supporting it, "the presence of contrary evidence is immaterial if there is evidence in support of the board's findings of fact." *Id.* at ¶ 9. In conducting this review, we are mindful that the board is permitted to accept the findings presented in the medical reports yet still reject their ultimate conclusions, *id.*, and it is not required to explain its decision or even cite the evidence upon which it has relied, *State ex rel. Tindira v. Ohio Police & Fire Pension Fund*, 130 Ohio St.3d 62, 2011-Ohio-4677, 955 N.E.2d 963, ¶ 30.

{¶ 17} The parties do not dispute that Dr. Jewell found that the 9 percent impairment to Wegman's right shoulder was not disabling and that Wegman had 0 percent impairment from his psychological conditions. At issue is whether Dr. Jewell's finding is "some evidence" supporting the board's denial of disability benefits for these conditions. Wegman maintains that Dr. Jewell's file-review report is not "some evidence" supporting the board's decision because he failed to consider evidence from the examining physicians and failed to explain the reasoning behind his recommendation, and further, Wegman asserts, Dr. Jewell failed to check boxes on the form showing that he actually had considered the

findings presented to him. Wegman notes that the physicians who actually examined him, including the fund's examining physicians, reported that the injuries were disabling. Further, Wegman argues that Dr. Jewell could not rely on Dr. Talmadge's file-review report, because Dr. Talmadge was never asked to consider the new medical reports and the new MRI that Wegman presented in support of his appeal as it related to his right shoulder. Last, he maintains that Dr. Jewell's file reviews cannot be considered "some evidence" supporting the finding that the psychological conditions were not disabling, because the only evidence presented—the reports of mental-health specialists—showed that his psychological conditions were disabling and Dr. Jewell lacked the expertise to contradict their opinions.

{¶ 18} We have held that a medical expert's file review can constitute "some evidence" supporting the denial of disability compensation. *State ex rel. Starr v. Indus. Comm.*, 114 Ohio St.3d 449, 2007-Ohio-4558, 872 N.E.2d 1227, ¶ 14. Although we recognize that in *Starr* the expert's file-review report was "extensive and meticulously detailed," *id*. at ¶ 15, the amount of supporting detail that the expert provides in the report goes to the weight and credibility of the expert's ultimate opinion, and the board, not this court, has "the exclusive authority to evaluate the weight and credibility of the medical evidence," *Kolcinko* at ¶ 7. The medical opinion expressed, when drawn from a review of all the evidence, is itself *some* evidence that the board can rely on in reaching a decision.

{¶ 19} This analysis applies to Wegman's claim that Dr. Jewell did not consider reports showing impairment to the right shoulder based on the failure to note which medical reports on record support his disability determination. Notably, the instructions on the medical-recommendation form for appeal hearings that Dr. Jewell completed state:

> In reviewing the member's records, the [Ohio Police & Fire] Medical Advisor *must* accept all findings of the examining physicians, but not the opinions drawn therefrom. In addition, the OP&F Medical Advisor *should* note all medical reports on record that may be supportive to the disability determination being made by the OP&F Medical Advisor.

(Emphasis added.) Tellingly, the form says that Dr. Jewell *should* note the supportive reports, not that he *must* do so. Nor did it require him to put a checkmark beside every document he *reviewed*. Accordingly, the fact that Dr. Jewell failed to note which reports support his determination that the shoulder injury was not disabling may affect the evidentiary weight of his medical opinion, but it does not mean that he failed to review all reports.

{¶ 20} Because there is no evidence that Dr. Jewell failed to consider all the evidence in the reports, his file-review report is some evidence that supports the board's determination that the right-shoulder impairment is not disabling. Dr. Jewell did not check the box that would have described Wegman's shoulder as disabling, even after he did check the box for Wegman's knee. This is an expression of a medical opinion drawn from the records and reports. Therefore, the board's decision to deny disability benefits for Wegman's shoulder was supported by some evidence.

{¶ 21} Regarding the psychological conditions, Dr. Jewell also chose not to check the box that they were disabling, again expressing a medical opinion. Further, although Dr. Glendening diagnosed Wegman with posttraumatic stress disorder, Dr. Evans concluded that Wegman did not meet the criteria for it. Dr. Evans also concluded that Wegman's "Dysthymic Disorder does not render him incapable of performing his duties as a Firefighter/EMT." He did opine that Wegman's anxiety disorder was disabling, but Dr. Evans also reported that during

the examination, Wegman "was not observed to be anxious." According to Dr. Evans, "[Wegman] was cooperative and friendly, and a rapport was easily established and maintained. * * * He maintained consistent eye contact throughout the interview. Attention and concentration were good. He was not observed to be restless or fidgety. Speech was normal for rhythm, rate and volume." Dr. Evans also pointed out that "[Wegman] had some difficulties describing these symptoms [of anxiety]" and noted "some signs indicating that he tended to portray himself in a negative light in specific areas. As a result, there may be some distortion of the clinical picture. For example, it is possible that there is an element of exaggeration in certain complaints and problems." Although Dr. Evans did not get the impression that Wegman was exaggerating his symptoms, "the results of the Personality Assessment Inventory indicate possible exaggeration of his psychological distress."

{¶ 22} Given these findings that Wegman did not suffer from posttraumatic stress disorder, that his dysthymic disorder was not disabling, that he had not displayed any observable symptoms of anxiety during the examination, and that the Personality Assessment Inventory results indicated that Wegman might have been exaggerating his symptoms, Dr. Jewell could form a medical opinion that Wegman's psychological conditions were not disabling. That opinion provides some evidence supporting the board's determination. And although Wegman claims that Dr. Jewell was not qualified to provide an opinion on the psychological conditions because he was not a mental-health specialist, Dr. Jewell could rely on Dr. Evans's report. And to the extent that Dr. Jewell reached a different conclusion from Dr. Evans regarding whether the anxiety disorder was disabling, Wegman points to no evidence in the record showing that a medical doctor such as Dr. Jewell is not competent to evaluate the severity of an anxiety disorder.

{¶ 23} Accordingly, some evidence supports the board's decision, and we affirm the judgment of the court of appeals denying Wegman the requested writ.

Judgment affirmed.

O'DONNELL, FRENCH, DEWINE, and GWIN, JJ., concur.

O'CONNOR, C.J., and FISCHER, J., dissent.

W. SCOTT GWIN, J., of the Fifth District Court of Appeals, sitting for O'NEILL, J.

_____

Jon Goodman Law, L.L.C., and Jon H. Goodman, for appellant.

Michael DeWine, Attorney General, and John J. Danish and Mary Therese J. Bridge, Assistant Attorneys General, for appellee.

_____