[Cite as *State ex rel. Parker v. State Teachers Retirement Sys. Bd.*, 2021-Ohio-4391.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel., <br> Peter G. Parker, | : | |
| | : | |
| Plaintiff-Appellant, | | No. 20AP-511 |
| | : | (C.P.C. No. 19CV-2080) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| State Teachers Retirement System <br> Board of Ohio, | : | |
| | | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 14, 2021

**On brief**: *Jones Law Group, LLC*, and *Nathaniel W. Jackson*, for appellant.

**On brief**: *Dave Yost*, Attorney General, *Samuel A. Peppers, III*, *Lisa A. Reid*, and *Isaac Molnar*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, Peter G. Parker, from a judgment of the Franklin County Court of Common Pleas denying appellant's request for a writ of mandamus to compel defendant-appellee, State Teachers Retirement System Board of Ohio ("STRB"), to approve his application for disability benefits.

{¶ 2} The following background facts are taken primarily from the trial court's findings of fact set forth in its mandamus decision. From 2003 through October 2011, appellant was a member of the State Teachers Retirement System ("STRS") and "worked as a school teacher in STRS-covered employment." In October 2011, appellant "left that

employment because he could no longer work a full year due to multiple sclerosis" ("MS"). Since October 2011, appellant "has been unable to work a full year due to MS."  (Decision at 2.)

{¶ 3}    In October 2011, appellant applied with STRS for disability benefits, and STRB "approved his application." Appellant "received STRS disability benefits related to his MS" from October 2011 to August 2014.  (Decision at 2.)

{¶ 4}    In August 2014, appellant "began working as a part-time teacher for Horizon Science Academy, which was an STRS-covered employer." Because Horizon Science Academy ("Horizon") was an STRS-covered employer, appellant's "STRS disability benefits terminated when he began working there."  Appellant "worked for Horizon, in STRS-covered employment, until late August 2014."  (Decision at 2.)

{¶ 5}    Appellant then began work as a full-time teacher at Rite of Passage ("ROP"), "a juvenile facility that was not an STRS-covered employer."  Appellant "worked for ROP from late August 2014 to mid-November 2017," during which "he was not eligible to receive STRS disability benefits."  (Decision at 2.)

{¶ 6}    Appellant's "contributing STRS service terminated in August 2014 when he left his STRS-covered employment with Horizon."  Pursuant to R.C. 3307.62(D), appellant "had until August 2016 to apply to STRS for disability benefits based upon that employment."  (Decision at 2.)  Appellant "did not apply to STRS for disability benefits based upon his employment with Horizon, and the 'window' for [appellant] to apply for STRS disability benefits based upon that employment closed in August 2016."  (Decision at 2-3.)

{¶ 7}    In 2016, appellant "pre-arranged with his friend James Weeks to substitute as a physical education teacher at The Center for Collaborative Solutions in Cincinnati, Ohio."  In August 2016, appellant "returned to STRS-covered employment" when The Center for Collaborative Solutions ("CCS") hired him as a substitute teacher. Appellant "did not actually work" for CCS "until October 14, 2016, when he worked one day as a substitute teacher for Mr. Weeks."  Due to "fatigue and other issues," appellant "terminated his employment" with CCS in November 2017.  (Decision at 3.)

{¶ 8}    On November 30, 2017, appellant applied to STRS for disability benefits "based upon his one day of employment at [CCS] on October 14, 2016."  Appellant's

application "was supported by a report by his treating physician, Aram Zabeti, MD, a neurologist, who reported that [appellant] suffered from relapsing remitting MS, that the condition was disabling, and that the condition was expected to last 12 or more months." (Decision at 3.)

{¶ 9}   Appellant's complete application for disability benefits was received by STRS on January 22, 2018.  At the request of the STRS Medical Review Board ("MRB"), "Gerald Steiman, M.D., a neurologist, performed an independent medical evaluation" of appellant on February 21, 2018.  Martin Gottesman, M.D., the chair of MRB, "asked Dr. Steiman to provide his opinion 'to determine if [appellant] is qualified for any further teaching service.' "  Dr. Gottesman instructed Dr. Steiman that " '[t]he purpose of the examination is solely the determination of disability for the member's last STRS Ohio covered position.' " (Decision at 3.)

{¶ 10} By letter dated February 28, 2018, Dr. Steiman reported to Dr. Gottesman that, in his opinion, appellant "was physically unable to return to full-time teaching due to MS."  Dr. Steiman suggested "it would be appropriate to reassess [appellant] in one year to evaluate for possible improvement or stability."  (Decision at 4.)

{¶ 11} By letter dated March 13, 2018, Dr. Gottesman "asked Dr. Steiman to clarify whether [appellant] was disabled from his most recent STRS-covered job, specifically, being a substitute teacher for one day per year."  In that letter, Dr. Gottesman asked Dr. Steiman to " 'review the enclosed Case Timeline and clarify your opinion.  Your conclusion should be specific to Mr. Parker's most recent STRS Ohio job.  Based on objective evidence is Mr. Parker disabled from substitute teaching for one day per year?' "  (Decision at 4.)

{¶ 12} By letter dated April 4, 2018, Dr. Steiman "clarified his opinion to Dr. Gottesman," stating as follows: " 'Due to the multiple sclerosis, Mr. Parker is unable to return to his prior job activity on a full time basis.  However, Mr. Parker's history, medical record review, and physical exam provide sufficient credible evidence to indicate he is able to work one day per year as a substitute teacher.' "  Dr. Steiman therefore "certified to the [MRB] that [appellant] was not physically or mentally incapacitated from his most recent job duties for 12 continuous months."  (Decision at 4.)

{¶ 13} The members of the MRB, i.e., "Claire Wolfe, M.D., James Allen, M.D., and Albert Kolibash, Jr., M.D., then reviewed [appellant's] medical records and provided

opinions to their Chair, Dr. Gottesman." (Decision at 4.) Dr. Wolfe, who issued a letter on April 19, 2018, stated in part:

> Peter Parker is a 43 man with a * * * 9yr history of relapsing remitting multiple sclerosis. * * * His last teaching job was as a substitute with the Center for Collaborative Solutions in Hamilton County. He worked one day in the year.
>
> Both Mr. Parker's attending neurologist, Dr. Zabeti * * * and the STRS examining neurologist, Dr. Steiman, describe Mr. Parker's major deficits as ataxia with unstable gait (but no need for ambulation aids and no history of significant falls) and dysmetria of especially his left hand. (He is right-handed.) He is independent in activities of daily living and has no difficulty with driving, working around the house, doing housework, managing money or participating in social activities.
>
> Mr. Parker had extensive cognitive testing 11/2/2017 by Dr. Jessica MacDonald at the U. of C. who concluded that "the current test results do not raise concern about his ability to work from a cognitive standpoint or manage his personal affairs." * * *
>
> Dr. Steiman's neurologic findings did not differ from those documented in his treating physician's notes. Dr. Steiman did not feel he could return to full time teaching but did find him able to continue as a substitute teacher. I agree.

{¶ 14} Dr. Allen submitted a letter, dated April 24, 2018, stating in part:

> I reviewed disability application materials on Peter G. Parker. He is a 43-year old substitute teacher for the Center for Collaborative Solutions who has a condition supported by his attending physician of multiple sclerosis. He initially developed incoordination and blurry vision in 2009 and was diagnosed with multiple sclerosis in 2011. A neuro-psychological evaluation by Jessica MacDonald * * * in November 2017 indicated generally intact cognitive function. * * * He has worked in various teaching capacities since 2003. * * * He worked 1 day as an STRS-covered substitute teacher in * * * 2016.
>
> In November 2017, his attending neurologist, Dr. Zabeti, recommended that he is permanently incapacitated due to multiple sclerosis.

In February 2018, he underwent an independent medical examination by Dr. Gerald Steiman who opined that he is not permanently incapacitated. Dr. Steiman found that he had appropriate memory, no cranial nerve deficits, mild-moderate dysmetria in the left upper and lower extremity, a wide-based ataxic gait, and a positive Romberg test. In a self-reported activities of daily living questionnaire, Mr. Parker reported little to no difficulty with most activities but moderate difficulty with: walking, climbing stairs, grasping, lifting, coordination, and vigorous physical activity. Dr. Steiman determined that although he is unable to work full-time, he could resume his previous work duties of 1 day per year of substitute teaching.

In summary, this STRS member has multiple sclerosis with difficulty of performing vigorous physical activities and some complex motor activities. Since his last employment as a substitute teacher covered by STRS in 2016, he was able to work for more than a year in a non-STRS teaching capacity. Although he clearly has physical impairments, they should not preclude him from working as a substitute teacher, particularly for the very limited time of his previous STRS-related employment of 1 day per year. I recommend that disability retirement be denied.

{¶ 15} On May 10, 2018, Dr. Kolibash issued a letter to Dr. Gottesman stating in part:

I reviewed the application for disability benefit related to [the] above member. * * *

The applicant is a 43-year-old, male substitute teacher who has applied for disability benefit because of multiple sclerosis. * * * Current symptoms include imbalance, instability, increasing fatigue with decreasing endurance, and a recent fall. * * *

* * *

An attending physician's report, dated 11/29/2017, was provided by Dr. Aram Zabeti. Dr. Zabeti diagnosed relapsing remitting multiple sclerosis and opined that the member was disabled. His report included the results of an outpatient neuropsychological evaluation dated 11/2/2017. * * * The results of the neuropsychological testing were interpreted as demonstrating that the member had generally intact cognitive abilities.

* * *

An independent medical examination was performed on 2/28/2018 by Gerald Steiman, M.D., a neurologist. Dr. Steiman performed a neurological evaluation including a history, physical examination, and review of medical data. The history is as described above. On this particular examination the applicant's major complaint was imbalance and disequilibrium. He also indicated problems with coordination involving the left hand, fatigue, generalized weakness, and difficulty with memory.

In his discussion Dr. Steiman indicated that the claimant has evidence of dysmetria of the left arm and leg and is moderately ataxic requiring support to gain stability when walking. Dr. Steiman opined that the applicant's "history, medical record review, and physical exam provide sufficient credible evidence that he is disabled as per the STRS Ohio definition." The medical examiner indicated that the applicant was unable to perform the demands of his prior job activity.

A follow up letter from Dr. Steiman was dated 4/4/2018. In this letter the medical examiner clarified his initial opinion and stated the following: ["]Due to the multiple sclerosis, (the applicant) is unable to return to his prior job activity on a full-time basis. However, (the applicant's) history, medical record review, and physical exam provided sufficient credible evidence to indicate that he is able to work one day per year as a substitute teacher."

In summary, the applicant is a 43-year-old, substitute teacher who has been teaching one day a year. His disabling condition is multiple sclerosis which is well documented * * *. Imaging studies have shown stability of lesions in the white matter and thoracic spinal cord. The member experiences instability of gait and currently has an abnormal neurological examination with dysmetria of the left upper extremity. Based upon my review of the information provided in this disability application it is my opinion that this member is unable to perform his duties on a full-time basis and as such is permanently incapacitated to work full-time. However, the member appears capable of working as a substitute teacher one day a year.

{¶ 16} On May 15, 2018, the MRB recommended to STRB that appellant's application for disability benefits "be denied." On June 21, 2018, STRB adopted the MRB's recommendation and "denied [appellant's] application for disability benefits." By letter

dated June 22, 2018, STRS notified appellant of the decision and advised him of his right to appeal the decision. On June 27, 2018, appellant "timely appealed" the denial of his application for disability benefits. (Decision at 8.)

{¶ 17} By letter dated June 28, 2018, STRS acknowledged receipt of appellant's appeal "and requested that he submit a written statement regarding his ability to perform his most recent STRS-covered position." (Decision at 8.) Appellant submitted a written statement to STRS on August 16, 2018. By letter dated August 28, 2018, "optometrist Matthew T. Ritter, O.D.," provided an opinion to appellant's attorney regarding " 'the visual findings and potential or current problems he may be experiencing.' " (Decision at 10.) By letter dated August 28, 2018, appellant's "friend, James Weeks," an elementary physical education teacher, provided information to appellant's attorney, including information regarding accommodations he provided to appellant on October 14, 2016. (Decision at 11.)

{¶ 18} By letter dated August 30, 2018, Dr. Steiman provided (per the request of Dr. Gottesman) an updated opinion to the MRB based on a review of "additional medical records" from appellant. (Decision at 12.) Dr. Steiman stated in part: " 'Based on Mr. Parker's history as well as the updated medical review record, there is strong and credible evidence to indicate that Mr. Parker is not disabled from * * * his one-day substitute teacher duties.' " Dr. Steiman further stated: " 'Given the observation that Mr. Parker has corrected vision of 20/20 in both eyes, there is no credible evidence that his vision would preclude his ability to return to his prior job activities.' " (Decision at 13.)

{¶ 19} By letter dated September 19, 2018, appellant's "treating physician, Dr. Zabeti," provided information to appellant's attorney stating it was his impression appellant " 'cannot return to his job as a substitute teacher for one day a year.' " (Decision at 13.)

{¶ 20} By letter dated October 31, 2018, Dr. Steiman provided an updated opinion to the MRB "having reviewed additional medical records" from appellant. In that letter, Dr. Steiman stated in part: " 'The updated medical record review provides no information that would cause me to alter my prior opinions. My opinion remains that Mr. Parker's history, updated medical record review, and physical exam provide sufficient credible evidence to indicate he is able to work one day a year as a substitute teacher.' " (Decision at 15.)

{¶ 21} In a memorandum dated November 8, 2018, Dr. Gottesman reported to STRB regarding appellant's application, stating in part: " 'The [MRB] continues to recommend that disability benefits be denied as there is no medical evidence of a disabling physical or psychiatric condition that would prevent Mr. Parker from performing his most recent job as a Substitute Teacher for one day per year, especially with the accommodations provided at that last single day of STRS service.' "  (Decision at 17-18.)

{¶ 22} On November 14, 2018, the STRS Disability Review Panel ("disability review panel") conducted an appeal hearing on the denial of appellant's application for disability benefits.  Appellant and his attorney "appeared at the hearing and addressed the panel." (Decision at 18.)

{¶ 23} During the hearing before the disability review panel, counsel for appellant argued that appellant "does meet the disability requirements inasmuch as he is physically incapacitated for the performance of his former position as a substitute teacher for one day a year as is established by a medically disabling condition here, his diagnosis of multiple sclerosis, or MS." (Tr. at 6.)  Counsel argued "if he were permitted to go back as a substitute teacher for one day, he would need an aide to assist him the entire time that he's there." (Tr. at 7.)  Also during the hearing, appellant described the day in which he worked at CCS, stating he was "a substitute for a physical education class elementary school."  (Tr. at 8.) Appellant stated he had "a substantial amount of accommodations that were provided by the regular ed teachers because they knew my limitations."  (Tr. at 10.)

{¶ 24} The chair of the disability review panel questioned appellant during the hearing as to whether "this one day of subbing was set up in a way to * * * get around the fact that your previous eligibility for disability application had expired, and so you needed to put in a day just to * * * reestablish your ability to apply."  Appellant responded: "I would have to say no because I had spent the previous 10 years being a regular classroom teacher." (Tr. at 20.)  The chair further inquired whether appellant had attempted "other kinds of teaching," because "[i]t seems like phys. ed. was kind of a reach." (Tr. at 20-21.)  Appellant stated he had "not subbed in any other classroom, whether it be English, another discipline, no, I have not."  Appellant further responded: "I am not a licensed teacher in any other subject than social studies, so I'm not a phys. ed. teacher." (Tr. at 21.)

{¶ 25} On November 16, 2018, STRB voted to affirm the denial of appellant's application for disability benefits. By letter dated November 16, 2018, STRS notified appellant that STRB "had affirmed its prior decision to deny his application for disability benefits." (Decision at 18.)

{¶ 26} On March 11, 2019, appellant filed a mandamus action with the Franklin County Court of Common Pleas. By decision and entry filed October 5, 2020, the trial court denied appellant's request for a writ of mandamus and dismissed the action.

{¶ 27} On appeal, appellant sets forth two assignments of error for this court's review:

> 1. The Court of Common Pleas erred in finding the February 28, 2018 and April 4, 2018 conflicting opinions of Dr. Steiman constituted "some evidence" to support the State Teachers Retirement System ("STRS") Board of Ohio's ("STRB") determination that Parker is not disabled.

> 2. The Court of Common Pleas erred in finding the opinions of State Teachers Retirement System Medical Review Board ("STRS MRB") doctors Wolfe, Allen and Kolibash [constituted] "some evidence" to support the STRB's determination that Parker is not disabled.

{¶ 28} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant argues the trial court erred in finding the opinions of the independent medical examiner (Dr. Steiman) and the three MRB physicians (Drs. Wolfe, Allen, and Kolibash) constituted "some evidence" to support STRS's determination he was not disabled.

{¶ 29} In order to be entitled to a writ of mandamus, "a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Wegman v. Ohio Police & Fire Pension Fund*, 155 Ohio St.3d 223, 2018-Ohio-4243, ¶ 14, citing *State ex rel. Love v. O'Donnell*, 150 Ohio St.3d 378, 2017-Ohio-5659, ¶ 3.

{¶ 30} STRB "manages the STRS funds," and "[t]he determination of whether a STRS member is entitled to disability retirement is solely within the province of the STRB." *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219,

¶ 13.  Under Ohio law, "[t]he determination by STRS and its retirement board, STRB, of whether a person is entitled to disability retirement benefits is reviewable by mandamus because R.C. 3307.62 does not provide any appeal from the administrative determination." *Id.* at ¶ 14.  Thus, "mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body."  *Id.*

{¶ 31}  An abuse of discretion occurs when an administrative body renders a decision that is "unreasonable, arbitrary, or unconscionable." *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.,* 144 Ohio St.3d 367, 2015-Ohio-3807, ¶ 17, citing *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.,* 122 Ohio St.3d 148, 2009-Ohio-2522, ¶ 11.  In this respect, "[t]he board abuses its discretion—and a clear right to mandamus exists—if it enters an order that is not supported by some evidence."  *Id.*, citing *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 26.  Thus, "[o]nly if the board's decision is not supported by *any* evidence will mandamus lie." (Emphasis sic.)  *Id.,* citing *State ex rel. Riddell v. State Teachers Retirement Bd.,* 10th Dist. No. 13AP-660, 2014-Ohio-1646, ¶ 20.  This court's task, "[a]t this stage of the proceedings," is to review the decision of the trial court "to determine if it abused its discretion in denying the writ."  *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.,* 148 Ohio St.3d 21, 2016-Ohio-3100, ¶ 23.

{¶ 32}  Pursuant to R.C. 3307.62(C), "[i]n order to be entitled to disability retirement benefits, an STRS member must be mentally or physically incapacitated for the performance of duty by a disabling condition, either permanent or presumed to be permanent for twelve continuous months following the filing of an application." *Pipoly* at ¶ 23, citing R.C. 3307.62(C).  R.C. 3307.62(D) states in part: "Application for a disability benefit must be made within a two-year period from the date the member's contributing service terminated." Thus, in accordance with the provisions of R.C. 3307.62(D), "termination from service begins the running of a two-year period during which an application for a disability benefit may be filed."  *State ex rel. Kleja v. State Teachers Retirement Bd.,* 10th Dist. No. 08AP-326, 2009-Ohio-2047, ¶ 66.

{¶ 33}  As set forth under the facts, STRS received appellant's complete application for disability benefits in January 2018 and, as noted by STRB, the only contributing service for appellant within two years of 2018 was his employment at CCS for a single day.  In this

respect, the supporting documentation for the application included information on a "report by employer," dated November 28, 2017, listing appellant's job title with CCS as "substitute teacher" and his payroll status as "[p]art-time * * * [a]s Needed." That report, in response to a request for a description of "any accom[m]odations" made, stated: "He only worked 1 day for us." Based on a review of the medical evidence, the MRB recommended to STRB that disability benefits "be denied as there is no medical evidence of a disabling physical or psychiatric condition that would prevent Mr. Parker from performing his most recent job duties as a Substitute Teacher for one day per year, especially with the accommodations provided at that last single day of STRS service." (Dr. Gottesman memo to STRS Board dated Nov. 8, 2018 at 3.)

{¶ 34} Appellant first argues that Dr. Steiman (STRS's independent medical examiner) initially agreed with Dr. Zabeti (appellant's treating physician) that appellant was disabled and "physically unable to perform the demands of his prior job activity." Appellant contends it was only after additional prompting from Dr. Gottesman of the MRB that Dr. Steiman offered his subsequent and "conflicting" opinion which states appellant could perform his job as a substitute teacher for one day. According to appellant, there was no reason for Dr. Gottesman to request that Dr. Steiman reconsider his opinion aside from the fact STRB did not want to approve his application. Appellant argues there has been no evidence to counter his contention he was unable to perform the essential duties of his job during the one day he worked. Appellant maintains that, without further explanation from Dr. Steiman, his opinion is unquestionably equivocal and cannot be considered some evidence.

{¶ 35} In response, STRB argues there was ample evidence to support the decision denying disability benefits, including evidence from appellant's own conduct, the findings of his personal physician, and extensive STRB evaluation. STRB notes appellant's treating physician, Dr. Zabeti, stated in a September 2018 report that appellant was "able to work a full day." STRB further contends the evidence indicates appellant was able to work a single day each year when necessary to make a claim for disability benefits, and that there is significant evidence he can still work a single day a year.

{¶ 36} Regarding appellant's claim that Dr. Steiman rendered equivocal opinions, STRB asserts that Dr. Steiman's assessment never wavered once he based his opinion on

the correct job description (i.e., STRB maintains Dr. Steiman has not changed his opinion as to whether appellant could return to his former job activity on a full-time basis, nor has he changed his opinion as to whether appellant can work one day a year as a substitute teacher).  STRB further argues that, contrary to appellant's assertion, file reviews conducted by MRB constitute some evidence to support the decision of STRB.

{¶ 37}  As indicated, appellant challenges the opinion of Dr. Steiman as equivocal. Under Ohio law, " 'equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.' " *State ex rel. Bryan v. State Teachers Retirement Sys. Bd. of Ohio,* 10th Dist. No. 15AP-1004, 2016-Ohio-5802, ¶ 32, quoting *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657 (1994).

{¶ 38}  On review, we agree with STRB that Dr. Steiman's opinion is not equivocal as repudiating an earlier opinion.  Specifically, Dr. Steiman did not change his opinion as to whether appellant was able to work full-time; rather, in response to a request by MRB to consider whether appellant was capable of a return to his most recent STRS job as a substitute teacher for one day, Dr. Steiman clarified that, while appellant could not return to his former position on a full-time basis, he was capable of returning to work one day per year as a substitute teacher (i.e., he was not incapacitated from his most recent STRS job duties for 12 consecutive months from the date of application).

{¶ 39}  Further, as noted under the facts, in addition to the opinion of Dr. Steiman, the three physicians of MRB each reviewed appellant's medical information and unanimously recommended denial of appellant's application for disability benefits.  Dr. Wolfe specifically noted appellant "is independent in activities of daily living and has no difficulty with driving, working around the house, doing housework, managing money or participating in social activities," and that extensive cognitive testing by a physician did not raise concern about his ability to work from a cognitive standpoint.  Dr. Allen similarly noted appellant had "little to no difficulty with most activities" and that, while he "clearly has physical impairments," such impairments "should not preclude him from working as a substitute teacher, particularly for the very limited time of his previous STRS-related employment."  Dr. Kolibash concluded, based on his review of information provided in the disability application, "it is my opinion that this member is unable to perform his duties on

a full-time basis * * *. However, the member appears capable of working as a substitute teacher one day a year."

{¶ 40} In addressing appellant's request for a writ of mandamus, the trial court, "[i]n considering the opinions of Doctors Steiman, Wolfe, Allen, and Kolibash," concluded that STRB "has demonstrated some evidence to support its decision" to deny appellant's application for disability benefits. (Decision at 20.) We agree that the record contains some evidence to support STRB's determination appellant was not disabled from his most recent job duties for 12 continuous months following the filing of the application.

{¶ 41} While appellant points to the disability opinion of his own treating physician, "the presence of contrary evidence is immaterial if there is evidence in support of the board's findings of fact." *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund,* 131 Ohio St.3d 111, 2012-Ohio-46, ¶ 9. Moreover, where "medical evidence conflicts in a matter concerning a benefits determination, we cannot substitute our judgment for that of [STRB] absent an abuse of discretion." *State ex rel. Mullenax v. State Teacher[s] Retirement Plan*, 10th Dist. No. 08AP-116, 2008-Ohio-4261, ¶ 18. The Supreme Court of Ohio has made clear that "a medical expert's file review can constitute 'some evidence' supporting the denial of disability compensation." *Wegman* at ¶ 18. In this respect, "the amount of supporting detail that the expert provides in the report goes to the weight and credibility of the expert's ultimate opinion, and the board, not this court, has 'the exclusive authority to evaluate the weight and credibility of the medical evidence,' [and] [t]he medical opinion expressed, when drawn from a review of all the evidence, is itself *some* evidence that the board can rely on in reaching a decision." (Emphasis sic.) *Id.* On review, we conclude the trial court did not err in its determination that some evidence supported the STRB's decision denying appellant's application for disability benefits.

{¶ 42} Appellant's contention that it was error for MRB to rely on the opinions of the three physicians of MRB (Drs. Wolfe, Allen, and Kolibash) as "some evidence" is without merit. Appellant's argument is premised on his claim that Dr. Steiman's opinion is equivocal, and that any opinions offered by MRB physicians based on Dr. Steiman's findings should be invalidated and similarly not considered as some evidence to support STRB's disability determination. Appellant further contends it would be procedurally an abuse of discretion, under the provisions of R.C. 3307.62(C) and (E), to consider the

opinions of MRB physicians after the opinion of Dr. Steiman has been invalidated. Having rejected appellant's contention that the independent medical examiner's opinion was equivocal, any claim that MRB physicians erred in relying on that opinion is not persuasive, nor has appellant shown any procedural error.

{¶ 43} As noted under the facts, following appellant's application for a disability benefit, STRB appointed an independent medical examiner who, in a report dated April 4, 2018, certified to STRB that appellant was not incapacitated from his most recent job duties for 12 continuous months. Following that determination, and in accordance with the provisions of R.C. 3307.62(E), the application and records were "reviewed by three independent physicians on a medical review board designated by STRB." *State ex rel. Menz v. State Teachers Retirement Bd.,* 144 Ohio St.3d 26, 2015-Ohio-2337, ¶ 3. Based on that review, MRB recommended denial, and STRB voted to deny disability; appellant was then afforded the opportunity to appeal that determination and appear at a hearing before a disability review panel, all in accordance with the provisions of R.C. 3307.62(F) and Ohio Adm.Code. 3307:1-7-06(B). *See Menz* at ¶ 3 ("If the medical review board recommends denial, and STRB votes to deny disability, the applicant may appeal, and a hearing will be conducted upon the applicant's request."). Following that appeal, STRB affirmed its prior determination.

{¶ 44} On review, the record indicates STRB properly considered the application in accordance with the provisions of R.C. 3307.62 and the Ohio Administrative Code. Further, because there was some evidence to support STRB's determination, the trial court did not abuse its discretion in denying appellant's request for a writ of mandamus.

{¶ 45} Based on the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

_____