[Cite as *State ex rel. Sanderlin v. State Teachers Retirement Sys.*, 2022-Ohio-2032.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Leslye A. Sanderlin, | : | |
| Relator, | : | No. 21AP-210 |
| v. | : | (REGULAR CALENDAR) |
| State Teachers Retirement System et al., | : | |
| Respondents. | : | |

---

D E C I S I O N

Rendered on June 16, 2022

---

**On brief**: *Law Offices of Gary A. Reeve*, and *Gary A. Reeve*, for relator.

**On brief**: *Dave Yost*, Attorney General, *Samuel A. Peppers, III*, and *Lisa A. Reid*, for respondents.

---

IN MANDAMUS

McGRATH, J.

{¶ 1} Relator, Leslye A. Sanderlin, has filed this original action seeking a writ of mandamus ordering respondents, State Teachers Retirement System of Ohio ("STRS") and the STRS board ("board"), to vacate the board's order upholding a prior decision terminating relator's previously allowed disability benefits, and to enter an order continuing such benefits.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. The magistrate issued the appended decision, including findings of facts and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. Specifically, the magistrate concluded there

was some evidence before the board to support a finding relator was no longer permanently disabled from her teaching position, and therefore the board did not abuse its discretion in terminating her disability benefits. No objections have been filed to that decision.

{¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we deny relator's request for a writ of mandamus.

*Writ of mandamus denied.*

KLATT and DORRIAN, JJ., concur.

_____

[Cite as *State ex rel. Sanderlin v. State Teachers Retirement Sys.*, 2022-Ohio-2032.]

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Leslye A. Sanderlin,      :

         Relator,             :            No. 21AP-210

v.                           :           (REGULAR CALENDAR)

State Teachers Retirement System et al.,      :

         Respondents.       :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on March 1, 2022

---

*Law Offices of Gary A. Reeve,* and *Gary A. Reeve,* for relator.

*Dave Yost,* Attorney General, and *Samuel A. Peppers, III,* for respondents.

---

IN MANDAMUS

{¶ 4} Relator, Leslye A. Sanderlin, seeks a writ of mandamus ordering respondents, State Teachers Retirement System of Ohio ("STRS") and the STRS board ("board"), to vacate the board's order upholding a prior decision to terminate relator's previously allowed disability benefits, and to enter an order continuing such benefits.

Findings of Fact:

{¶ 5} 1. Relator was a STRS member through her employment as a music teacher with Columbus City Schools. (Stip. at 4, 8, 11.)

{¶ 6} 2. Relator submitted a disability application received by STRS on October 7, 2002. (Stip. at 8.)

{¶ 7} 3. Relator's disability application describes her physical and/or mental disability as "extreme exhaustion and depression from 16 [years] of dedicated service

without taking care of myself.  Presently unable to focus on daily classroom responsibilities including elevated blood pressure from years of unexpressed emotions."  (Stip. at 9.) Relator's disability application lists her attending physicians as Larry Pfahler, M.D., and Young Kang, M.D.  (Stip. at 9.)

{¶ 8}   4. Drs. Pfahler and Kang each submitted an attending physician's report supporting relator's initial disability application indicating that relator was disabled due to psychiatric conditions.  (Stip. at 12, 19.)

{¶ 9}   5. Richard H. Clary, M.D., completed an independent psychiatric evaluation of relator at the request of STRS on November 14, 2002.  (Stip. at 21-26.)  Dr. Clary opined that relator was not disabled and could return to work in January 2003.  (Stip. at 25.)  Dr. Clary's report noted that relator had been seeing a social worker for approximately two years, a psychological therapist for an indeterminate period of time, and had been referred to Dr. Pfahler for prescriptions, which at the time of Dr. Clary's examination included Lexapro, Trazodone, and Wellbutrin daily.  (Stip. at 22.)  Relator self-reported a long history of depression sometimes triggered by family events, including the loss of her sister in the past year, minimal tobacco use, no alcohol, and a history of daily marijuana use reduced to weekly recently.  (Stip. at 23.)  Dr. Clary reviewed records from Sierra Tucson, a psychiatric facility that treated relator on an inpatient basis in August and September 2002. Despite advice of a therapist in that facility, relator had not stopped using marijuana and Dr. Clary noted that "chronic use of marijuana is a risk factor for depression."  (Stip. at 25.)

{¶ 10} 6. The STRS board did not adopt Dr. Clary's recommendation and granted disability with an effective date of February 1, 2003.  (Stip. at 123.)

{¶ 11} 7. Relator underwent periodic re-examinations during her period of disability.  The first independent examination by Dr. Clary occurred shortly after commencement of disability benefits and took place on March 19, 2003.  (Stip. at 30-35.) The STRS medical review board recommended continuing approval of relator's disability benefits conditioned on continued psychiatric treatment.  (Stip. at 36.)

{¶ 12} 8. Dr. Clary again re-examined relator on February 2, 2005 and in a report dated February 3, 2005 produced a report recommending continuation of disability:

> Ms. Sanderlin has been in treatment with a social worker since 2000. She has been in treatment with her psychiatrist for approximately 3 years. In my medical opinion, she's had very little improvement in her depression.

> In my medical opinion, Ms. Sanderlin is unable to perform the duties of a teacher and should continue on disability retirement. She should continue treating with her psychiatrist and social worker.

(Stip. at 46.)

{¶ 13} 9. Dr. Pfahler continued psychiatric treatment of relator and submitted attending physician's reports periodically from 2003 through 2016 opining that relator remained unable to work. (Stip. at 37-40, 49-54.)

{¶ 14} 10. More recently, relator's attending psychiatrist, Deborah Jones, M.D., submitted a report dated September 25, 2020 opining that relator remained incapacitated for her previous teaching duties. (Stip. at 56.) Dr. Jones described relator's major symptoms as "depressed mood — persists [but] less severe, decreased concentration, indecisiveness, forgetful, insomnia." (Stip. at 56.) Dr. Jones' report notes that relator at the time of the report was working 30 plus hours per week as a nurse's assistant in home healthcare. (Stip. at 56.)

{¶ 15} 11. Relator submitted a "Statement of Employment and Earnings by a Disability Benefit Recipient" received by STRS on May 28, 2020. (Stip. at 55.) Relator described her 2019 employers, including her employment or volunteer work as a nursing assistant with Holding Hands, a home healthcare organization, and as a musician with Ballet Met and Centenary United Methodist Church. (Stip. at 55.)

{¶ 16} 12. STRS obtained another independent psychiatric evaluation of relator performed by Olaya Lizette Solis, M.D., on February 1, 2021. (Stip. at 107-08.) Dr. Solis noted that relator had worked as a nursing assistant for Holding Hands for two years, played piano for Ballet Met for four months, and played piano in her church during 2019. Dr. Solis noted relator's statement that relator was unhappy because she had not been able to work in the field of her choice, having obtained a certificate in animal training, and continued to prefer employment in that field. (Stip. at 112.) Dr. Solis reviewed relator's file and the opinions of her providers and opined that relator was capable of resuming regular full-service similar to that from which she had retired. (Stip. at 106.)

{¶ 17} Dr. Solis's observations included the following:

> Based on my evaluation, it is my opinion that Ms. Sanderlin can work. She has held various jobs since entering her period of retirement from teaching, such as in housecleaning and playing the piano at a church and for a ballet company. Most recently,

she has been working as a nursing assistant and indicated that she is able to adhere to her work schedule and tend to her duties. She expressed that she is still hoping to find her dream job working as an animal trainer. While I do not have information from her employers about how she has functioned in these positions, Ms. Sanderlin indicated to me that she enjoys having something to do. It is difficult to know how she would function in her former teaching position because she has not been in this role since her retirement, but it is my opinion that she is not incapacitated by her condition in the way that she was when she first stopped teaching.

In summary, it is my opinion that Ms. Sanderlin's condition has improved over the years, while in treatment for her mental illness, to the point that she has worked in various capacities. The original debilitating depressive symptoms that were present when she applied for disability do not seem to be present at this time. Her current mental condition does not seem to prohibit her from working however, it is my recommendation that she continues in psychiatric treatment and taking medication for management of her mental health conditions.

(Stip. at 114.)

{¶ 18} 13. Three members of the STRS Medical Review Board independently reviewed relator's file and stated their recommendations.

{¶ 19} Claire Wolfe, M.D., noted that at the time relator was granted disability, her depression was severe, but she had gradually improved "as her various psychiatrists' notes have documented although none of her treating psychiatrists have felt she could/should return to teaching although they have not specified why since she has gradually resumed working in other occupations." (Stip. at 118.) Dr. Wolfe further noted, "[n]one of her treating physicians have said that the teaching per se contributed to her depression." *Id.*

{¶ 20} James Allen, M.D., summarized his conclusions as follows:

In summary, this STRS member has been receiving disability benefits for depression since 2003. Since that time, her depression has improved and she no longer abuses marijuana. She is able to be employed as a nursing aide and plays piano for the Ballet Met and a church. An independent medical examiner has determined that her depression is no longer permanently incapacitating. I recommend that disability retirement be terminated.

(Stip. at 119.)

{¶ 21} Jeffrey Hutzler, M.D., wrote that relator's condition had improved in recent years:

> Ms. Sanderlin is a woman who struggled over years with depression and some difficult character traits, but has slowly grown in her ability to tolerate day to day stresses to the point where she is functional and is no longer disabled in her ability to work. I believe at this point that she could resume work similar to that from which she retired. I believe this has been well documented in Dr. Solis's report.

(Stip. at 120.)

{¶ 22} 14. Martin J. Gottesman, M.D., Chair of the STRS Medical Review Board, transmitted the board's opinion and recommended termination of disability benefits. The STRS board met on March 18, 2021 and terminated relator's disability benefits effective June 30, 2021. (Stip. at 137, 139.)

{¶ 23} 15. Relator submitted a timely appeal without additional supporting documentation other than a statement of employment and earnings specifying that relator worked as a nursing assistant approximately 25 hours per week during year 2020, earning $19,150.38. (Stip. at 155.)

{¶ 24} 16. The STRS review panel considered relator's appeal on May 20, 2021, and the board voted to affirm its prior decision to terminate benefits. (Stip. at 2-3.)

{¶ 25} 17. Relator filed her complaint in mandamus with this court May 11, 2021.

Discussion and Conclusions of Law:

{¶ 26} Mandamus is an appropriate remedy when no statutory right of appeal is available to correct an abuse of discretion by an administrative body. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14. Because there is no right to appeal a decision of the STRS board, mandamus is available to correct an abuse of discretion in determining benefits eligibility. *See, e.g.*, *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 127 Ohio St.3d 257, 2010-Ohio-5770, ¶ 13; *State ex rel. Hughes v. Pub. Emps. Retirement Sys.*, 36 Ohio St.3d 11, 13 (1988).

{¶ 27} An abuse of discretion exists when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, ¶ 11. The retirement board abuses its discretion if it enters an order that is not supported by some evidence or authorized by its enabling statutes. *State ex rel.*

*Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 26, citing *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, ¶ 19; *State ex rel. Sales v. Ohio Pub. Emps. Retirement Bd.*, 156 Ohio St.3d 433, 2019-Ohio-1568, ¶ 14-15.

{¶ 28} The magistrate concludes that Dr. Solis's report constitutes some evidence upon which the STRS board could rely to terminate relator's disability retirement benefits. Relator argues that STRS did not rely on the correct medical evidence and improperly disregarded the reports of relator's treating physicians. The question, as always in such cases before this court, is not whether the board relied on the correct evidence or contradictory evidence in the record, but whether the board relied on some evidence.

{¶ 29} The STRS board, not physicians, makes the ultimate decisions regarding disability, and a physician's opinion is not conclusive. *State ex rel. Hulls v. State Teachers Retirement Bd.*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26. The STRS board is not required to accept views of any particular doctor favored by relator, or give greater weight to relator's treating physicians. *Pipoly* at ¶ 24, 26. Ultimately, the existence of contrary evidence is immaterial "if there is evidence in support of the board's findings of fact." *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund,* 131 Ohio St.3d 2012-Ohio-46, ¶ 9. Even in the case of an independent examination at the pension board's request, "the board is permitted to accept the findings presented in the medical reports yet still reject their ultimate conclusions." *State ex rel. Joyce v. State Teachers Retirement Sys. of Ohio*, 10th Dist. No. 20AP-507, 2021-Ohio-4279 (Appended Mag.'s Decision, quoting *State ex rel. Wegman v. Ohio Police & Fire Pension Fund*, 155 Ohio St.3d 223, 2018-Ohio-4243, ¶ 16. Ultimately, "the board is deemed to know what a teaching job entails and whether the recipient is disabled from it." *State ex rel. Kelly v. State Teachers Retirement Sys. of Ohio,* 10th Dist. 11AP-527, 2012-Ohio-4613, ¶ 9.

{¶ 30} Relator asserts that Dr. Solis provided an opinion consisting entirely of a conclusion without analysis or reasoning. As detailed above, Dr. Solis's opinion reviewed relator's file and provided a detailed description of relator's medical history. Dr. Solis noted that relator self-described as needing something to do after she retired and recently working as a nursing assistant while playing piano for Ballet Met and a church. Dr. Solis noted that relator had obtained a certificate in animal training but had been unable to find work in this field, which relator found discouraging. Dr. Solis specifically opined that

relator met the DSM-5 criteria for major depressive disorder in partial remission. (Stip. at 113.) Dr. Solis described an extensive history with recent improvement that contrasted with the early reports by Dr. Pfahler and others in the file.

{¶ 31} While Dr. Solis's opinion alone would constitute the requisite "some evidence" to preclude a writ here, the opinions furnished by the members of the STRS Medical Review Board also support the STRS board's determination. File reviews by physicians will constitute "some evidence" in and of themselves. *State ex rel. Wegman v. Ohio Police & Fire Pension Fund*, *supra*, at ¶ 18.

{¶ 32} Relator next argues in this mandamus action that certain cases on admissibility of an expert opinion should have prevented the board from examining Dr. Solis's opinion. Simply put, these cases are Federal cases in other areas of law and do not apply to Ohio pension case proceedings, where the standard for admitting and weighing evidence is well-established and insular.

{¶ 33} Finally, relator argues that STRS has in some way breached its fiduciary duty to relator. In essence, and the magistrate admits that the characterization is perhaps harsh, relator's position is the STRS board has a duty to relator to weigh the evidence as relator prefers, rather than as the board sees fit. To the contrary, the board's fiduciary duty is to administer the funds according to law. This court recently rejected these fiduciary arguments:

> We likewise find meritless relator's contention that the board failed to meet its fiduciary duty to relator by not excluding the IME reports of Drs. Steiman and Mankowski based on Evid.R. 403. As previously set forth, there is no authority for relator's proposition that the rules of evidence apply to this matter in any event. Furthermore, while it is accurate that OPERS has a fiduciary duty "to administer each individual's plan for the benefit of the participant or its designated beneficiary," *Poliseno v. Mitchell*, 10th Dist. No. 09AP-1002, 2010-Ohio-2615, ¶ 22, in this case there is no support in the record for relator's contention that the board breached this fiduciary duty by properly considering the IME reports of Drs. Steiman and Mankowski. Relator's second objection is overruled.

{¶ 34} *State ex rel. Powell v. Ohio Pub. Emps. Retirement Sys.* 10th Dist. No. 19AP-600, 2021-Ohio-920, ¶ 11, *aff'd* 2021-Ohio-4030 (slip opinion). Moreover, STRS, as with the other retirement boards in Ohio, is *required* to consider the opinions of its examining

physicians. R.C. 3307.48(C); Ohio Adm.Code 3307:1-7-02; *see also Powell,* 2021-Ohio-4030 at ¶ 19, examining comparable OPERS provisions under R.C. 145.35(E).

{¶ 35} To bolster the fiduciary argument, relator turns to application of certain Federal regulations under the Employee Retirement Income Security Act of 1974 ("ERISA"). Again, these do not apply to STRS board proceedings which are specifically excluded from coverage as a governmental plan under 29 U.S.C. 1003(b)(1). *Erb v. Erb,* 75 Ohio St.3d 18, 20 (1996). The Supreme Court of Ohio in *Powell* again noted the exception to ERISA regulation:

> Powell bases his fiduciary-duty argument on the portion of R.C. 145.36 that states that the members whom OPERS determines qualify for disability benefits "shall be retired on disability." However, nothing in R.C. 145.36 mentions a fiduciary duty, let alone imposes one on the OPERS board with respect to its determination of Powell's disability-benefits application.
>
> Powell next analogizes the OPERS board to fiduciaries who govern benefit plans under the federal Employee Retirement Income Security Act ("ERISA"), citing federal case law setting forth, in general terms, the duty of ERISA fiduciaries to "see that those entitled to benefits receive them," *Gaither v. Aetna Life Ins. Co.,* 394 F.3d 792, 807-808 (10th Cir.2004). But *Gaither* also notes the duty of ERISA fiduciaries "to protect the plan's assets against spurious claims." *Id.* at 807. More to the point, this court has made it clear that ERISA does not apply to OPERS. *Erb v. Erb,* 75 Ohio St.3d 18, 20 (1996) ("Congress expressly exempted government retirement systems * * * from ERISA's scope").

*Powell,* 2021-Ohio-4030, at ¶ 20-21.

{¶ 36} In conclusion, the magistrate finds that both on initial review and on appeal before the STRS board, there was some evidence before the board to support a finding that relator is no longer permanently disabled from her teaching position. The STRS board therefore did not abuse its discretion in terminating relator's disability benefits, and it is the magistrate's decision and recommendation that this court should deny relator's request for a writ of mandamus. As a result, relator's application for fees and costs is also denied.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).